**07 C 6593**

**JUDGE GOTTSCHALL**
**MAGISTRATE JUDGE KEYS**

Exhibit A

| 2120 – Served | 2121 – Served |
|---|---|
| 2220 – Not Served | 2221 – Not Served |
| 2320 – Served By Mail | 2321 – Served By Mail |
| 2420 – Served By Publication | 2421 – Served By Publication |
| SUMMONS | ALIAS - SUMMONS     CCG N001-10M-1-07-05 ( |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, _____ CHANCERY _____ DIVISION

(Name all parties)

Astor Plaza Condominium Association, Daniel G. Mohen,

Travis W. Cochran, Geeta Krishnamurthi, and William S. Loder , Plaintiffs

Travelers Casualty and Surety Company of America

and Merrimack Mutual Fire Insurance Company, Defendants.     SUMMONS

BOND LOADED

07CH 29201
No.     **RECEIVED**
STATE OF ILINOIS

OCT 2 3 2007  *H 9:05p.*

**DEPT. OF INSURANCE**
**CHICAGO, ILLINOIS**

**To each Defendant:** Travelers Casualty and Surety Company of America, c/o Illinois Division of Insurance, 100 W. Randolph, #9-301, Chicago, IL 50601-3395

**YOU ARE SUMMONED** and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☐ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 – Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 – Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 – Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 – Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 – Markham
16501 S. Kedzie Pkwy.
Markham, IL 60426

☐ Child Support
28 North Clark St., Room 200
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 34622

Name: Barone & Jenkins, P.C.

Atty. for: Plaintiffs

Address: 635 Butterfield Road, Suite 145

City/State/Zip: Oakbrook Terrace, IL 60181

Telephone: (630) 472-0037

Service by Facsimile Transmission will be accepted at: _____

WITNESS,

OCT 1 2 2007

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
Clerk of Court, IL

Date of service: _____
(To be inserted by officer on copy left with defendant or other person)

_____     _____
(Area Code)     (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

13562

## IN THE CIRCUIT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

ASTOR PLAZA CONDOMINIUM )
ASSOCIATION, DANIEL G. MOHEN, )
TRAVIS W. COCHRAN, GEETA )
KRISHNAMURTHI, and WILLIAM )
S. LODER, )
)
        Plaintiffs, )
)       Case No.   **07CH29201**
        v. )
)
TRAVELERS CASUALTY AND )
SURETY COMPANY OF AMERICA )
and MERRIMACK MUTUAL FIRE )
INSURANCE COMPANY, )
)
        Defendant. )

FILED 10-3
2007 OCT 12  AM 9:08
CIRCUIT COURT OF COOK
COUNTY, ILLINOIS
CHANCERY DIV.
DOROTHY BROWN
CLERK

## <u>COMPLAINT FOR DECLARATORY RELIEF</u>

NOW COME the Plaintiffs, ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, by and through their attorneys, Barone & Jenkins, P.C., and for their Complaint for Declaratory Relief, states as follows:

### <u>NATURE OF THE ACTION</u>

1.    Plaintiffs are insured by Defendants Travelers Casualty and Surety Company of America ("Travelers") and Merrimack Mutual Fire Insurance Company ("Merrimack") under various policies of insurance. Plaintiffs bring this action pursuant to section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), against the Defendants to obtain a declaration that the Defendants' insurance policies provided defense and indemnity coverage to Plaintiffs for the claims made against them in a lawsuit filed by Margaret Goldberg in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (the "*Goldberg* Litigation").

## JURISDICTION AND VENUE

2.    This court has jurisdiction pursuant to the Declaratory Judgment Act, 735 ILCS 5/2-701. There is an actual controversy between the parties and a declaratory judgment is necessary to determine the parties' rights and obligations relative to the payment of defense and indemnity costs for a pending litigation matter.

3.    Venue is appropriate pursuant to 753 ILCS 5/2-103(e).

## THE PARTIES

4.    Plaintiff, Astor Plaza Condominium Association ("Astor Plaza"), is a Condominium Association organized under the laws of the State of Illinois, which serves as the association for the condominium located at 39 East Schiller in Chicago, Illinois.

5.    Plaintiff, Daniel G. Mohen ("Mohen"), is an Illinois resident living in Unit 2E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

6.    Plaintiff, Travis W. Cochran ("Cochran"), is an Illinois resident living in Unit 1W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

7.    Plaintiff, Geeta Krishnamurthi ("Krishnamurthi"), is an Illinois resident living in Unit 3W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

8.    Plaintiff, William S. Loder ("Loder"), is an Illinois resident living in Unit 4W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

9.    Plaintiffs Mohen, Cochran, Krishnamurthi, and Loder are current members of the Board for Astor Plaza.

10    On information and belief, defendant Travelers is an insurance company authorized to transact insurance business in Illinois.

11.    On information and belief, defendant Merrimack is an insurance company authorized to transact insurance business in Illinois.

12.    Margaret Goldberg ("Goldberg") is an Illinois resident living in Unit 4E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

13.    Goldberg is the plaintiff in an action more fully described below.

## FACTS COMMON TO ALL COUNTS

### The Goldberg Litigation

**A.    *Goldberg's Original Complaint*.**

14.    In November 14, 2006, Goldberg filed a lawsuit in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (A copy of the original *Goldberg* Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "A").

15.    In the original Complaint, Goldberg alleged certain actions and/or inactions of the Astor Plaza Condominium Association Board of Directors relative to her and certain common elements and limited common elements associated with her condominium unit. Count I was a claim for oppression of a minority shareholder pursuant to the Illinois Business Corporations Act, and Count II was for declaratory relief.

16.    The original Complaint included the following allegations, among others:

(a)    Goldberg has experienced oppression as a minority owner by certain actions and proposed actions of the Astor Plaza Board of Directors;

(b)    over the course of the last five or six years, Goldberg found it increasingly difficult to get responses to her concerns with regard to the building;

(c)    Goldberg was "compelled" to retain counsel because the Association disregarded her interests and was failing to complete work that was to have been done with regard to a number of common elements affecting her property; and

(d)    Astor Plaza disregarded Goldberg's concerns about the front window frame on her unit and the structural integrity of the window casings on the side of her unit, reneged on a commitment to repair Goldberg's exterior metal balcony, effectively set aside Goldberg's complaints about building

3

security, and continued to enforce building rules and regulations only on a selective and discriminatory basis.

17.    Goldberg further complained about a renovation plan that began in September 2006 which was allegedly aimed primarily at improving the overall appearance of the front lobby and building façade.

18.    In Count I, Goldberg requested the court to grant the following relief:

    (a)    the entry of an order requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

    (b)    the entry of an order prohibiting Astor Plaza from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the by-laws;

    (c)    the entry of an order appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same; and

    (d)    the entry of an order granting Goldberg her costs of suit and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

19.    On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete work as requested, and/or to pay for completion of said work.

**B.    *Goldberg's First Amended Complaint.***

20.    Goldberg later filed a First Amended Complaint with more detailed factual allegations, and which contained the same two counts as those in the original complaint. (A copy of the First Amended Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "B").

21.    In the First Amended Complaint, Goldberg alleged, among other things, that the defendants (Plaintiffs herein) have acted in a manner that was oppressive with regard to

4

Goldberg's interest in the building, in dereliction of the obligations imposed upon them by the governing documents, in bad faith and in an arbitrary, overbearing and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be borne by Goldberg.

22.    In Count I of the First Amended Complaint, Goldberg requested the court enter an order:

(a)    requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

(b)    declaring that any financing agreement which the unit members may have voted or may in the future vote to implement, pursuant to which the rights and interests of Astor Plaza would be in any way impaired or subject to a lien, is invalid and unenforceable under the governing documents and that, by virtue thereof, no such liens should be enforced as against any rights or property in which the Goldbergs (or other non-voting members) have an interest;

(c)    prohibiting Astor Plaza's unit owners from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the governing documents;

(d)    requiring that Astor Plaza maintain and make available minutes which accurately reflect what takes place at meetings, which should be scheduled pursuant to the governing documents, and which are properly ratified as minutes at appropriate meetings;

(e)    requiring that Astor Plaza's Board enforce both the rules and regulations of the Association and the obligations imposed upon unit owners by the governing documents and that appropriate fines be levied against unit owners who have violated these rules, regulations and obligations;

(f)    compel appropriate modifications to the governing documents so as to establish a dispute resolution procedure that would allow for individuals with minority interests, such as Goldberg, to pursue relief in such circumstances without the need for incurring costs and expenses such as those attendant to this lawsuit (i.e., a mediation or arbitration procedure);

(g)    appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to

5

the governing documents which is prepared to perform its duties in accordance with the same; and.

(h)    granting Goldberg her costs of suit, attorneys fees incurred and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

23.    On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunction relief requested by Goldberg in the First Amended Complaint if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

24.    . On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

25.    The attorney fees sought by Goldberg were sought as monetary relief by virtue of the Condominium Property Act and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

C.    *Goldberg's Second Amended Complaint.*

26.    On or about August 28, 2007, Goldberg filed a Second Amended Complaint containing eight counts. (A copy of the Second Amended Complaint is attached an incorporated by reference, as if fully set forth herein, as Exhibit "C").

27.    In Count I of the Second Amended Complaint, Goldberg sought relief under 765 ILCS 605/19, for the alleged failure of Astor Plaza to produce minutes of meetings, and she alleged she was "compelled" to retain an attorney to request that she be provided copies of meeting minutes from prior meetings.

28.    Goldberg further alleged in Count I that, "[u]ntil such time as Astor Plaza produces those minutes to Goldberg, Goldberg will continue to incur attorneys fees and costs for

6

which she requests recovery pursuant 765 ILCS 605/19," and she asked the court to compel Astor Plaza to produce the minutes for meetings held from 2004 to the present.

29.    Goldberg further asked the court to enter an order awarding Goldberg her attorney's fees and costs, "together with such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law."

30.    In Count II, Goldberg sought relief under 765 ILCS 605/19 for Astor Plaza's alleged failure to produce applicable rules and regulations, and she asked the court to enter an order compelling Astor Plaza to pay the attorney fees and costs that Goldberg had incurred in connection with the actions she had taken through her counsel to request current copies of rules and regulations from 2005 to 2007, "together with such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law."

31.    In Count III, Goldberg sought relief against Loder under 805 ILCS 105/103.20, which section provides in relevant part:

> All persons who assume to exercise corporate powers without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

32.    In Count III, Goldberg further alleged that Loder "used his ostensible authority with the Board" to make certain promises to Goldberg and to demand certain accommodations for himself and members of his household, and that she was consistently "harassed by the Loder household."

33.    Count III further alleged that Goldberg was denied access to common property, thereby incurring "damages." Moreover, Goldberg asked the court to award her damages, together with attorney fees and costs, in an amount in excess of $50,000, together with additional relief as the court deems just and proper.

34.    In Count IV, Goldberg sought relief under 805 ILCS 105/108.21 against Astor Plaza for its alleged failure to provide access to and recording of meetings. Goldberg asked the

court to enter a declaratory judgment declaring that she has a right to designate a representative to attend and record board meetings and further awarding her attorney fees and costs, "and such additional relief as the Court deems just and appropriate or to which she is otherwise entitled as a matter of law."

35.    In Count V, Goldberg sought relief under Section V of the Declaration against all defendants with respect to the financing obtained relative to the construction project undertaken by the Board.  Goldberg alleged that the underlying defendants (Plaintiffs herein) should be required to assume the costs of discharging the lien placed on the property, including both the cost of the individual shares, any pre-payment penalties, attorney fees and costs, and any other costs and expenses arising from that lien.

36.    Among other things, Goldberg sought an accounting regarding all expenditures and work done with respect to the construction project, and sought judgment against the defendants (Plaintiffs herein) individually "in such amount as the trier of fact determines would be necessary to discharge any lien, mortgage or other encumbrance created by the project, together with any costs and expenses incurred in connection therewith," plus costs and attorneys fees and "such additional relief as the Court deems just and proper or to which Goldberg may otherwise be entitled as a matter of law."

37.    In Count VI, Goldberg sought declaratory judgment relief with regard to Astor Plaza's duties and obligations under 765 ILCS 605/18(b)(2). She claimed that the individual defendants had used their positions as members of the Board to establish policies and procedures that recognize the existence of "*de facto*" segregation of unit owners depending upon whether they are or are not members of the Board.

38.    In Count VI, Goldberg specifically requested that each defendant who is found to have violated applicable rules and regulations "should be required to pay such fines or violations

as may be provided for in the governing documents or rules and regulations, together with an amount sufficient to cover any damages resulting therefrom," plus costs and additional relief.

39.    In Count VII, Goldberg brought a claim against Astor Plaza for its alleged failure to maintain the common elements. Goldberg alleged that she has a balcony that is substantially rusted, a deteriorating window frame in the front bay window, and side window frames which are badly deteriorated in her apartment.

40.    Goldberg asked the court to declare that the work necessary to repair Goldberg's balcony, and east and north side window frames, is the responsibility of Astor Plaza and that Astor Plaza should therefore pay for and ensure that those elements are repaired and restored with all due haste. Goldberg also sought a judgment in an amount sufficient to cover any damages shown to have resulted from Astor Plaza's failure to provide such repair and restoration thereto, plus costs and other additional relief.

41.    In Count VIII, Goldberg sought relief under 805 ILCS 5/112.50, which provides that a court may dissolve a corporation if the corporation is acting in a manner that is oppressive to shareholders or the corporate assets are being misapplied or wasted. Goldberg alleged that the defendants acted in a manner that was oppressive with regard to Goldberg's interest in the building, in dereliction of the obligations imposed upon them by a governing document, in bad faith and in an arbitrary and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be wrongfully borne by Goldberg.

42.    Goldberg sought injunctive relief and the appointment of an interim receiver. Goldberg requested that the court enter a declaratory judgment and to require that the Board complete work with regard to the limited common elements adjoining the Goldberg unit, plus other declaratory relief.

9

43.    Goldberg's specific demand for "damages" in Count III and Count IV of the Second Amended Complaint constituted a claim for "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

44.    Goldberg's demand for judgment in Count V was a demand for monetary relief and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

45.    With respect to the declaratory relief requested in the Second Amended Complaint, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

46.    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

47.    The attorney fees sought by Goldberg in the Second Amended Complaint were sought as monetary relief by virtue of the Condominium Property Act and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

## The Tendering Of The Goldberg Litigation For Defense

48.    Plaintiffs gave Travelers and Merrimack notice of the Goldberg Litigation and on numerous occasions have requested that each provide a defense.

49.    Travelers has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

50.    Merrimack has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

51.    Plaintiffs have incurred cost and expense, and will continue to incur cost and expense, relative to the Goldberg Litigation.

**The Merrimack Policy**

52.    Merrimack issued Policy No. SBP220-6003, covering the Policy Period of December 27, 2004 through December 27, 2005. (A copy of the Merrimack Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "D").

53.    Astor Plaza is the named insured under the Merrimack Policy, and each of the other Plaintiffs are insureds under the Merrimack Policy.

54.    The Merrimack Policy contains a Directors and Officers Liability Endorsement with claims made coverage. This Endorsement contains the following coverage grant:

SECTION I – COVERAGES

A.    INSURING AGREEMENTS

1.    We will pay those sums that the "Insured" becomes legally obligated to pay as damages, in excess of the "Insured's" retention, because of any civil claim first made against the "Insured" during the policy term, or during the Insured's Extended Discovery Period, arising out of any "Wrongful Act" committed during the policy term. No other obligation or liability to pay sums or perform acts or services is covered unless provided for under Supplementary Payments.

a.    The most we will pay for damages is limited as described in Limits of Insurance above;

b.    We may, at our discretion, investigate any "Wrongful Act" and settle any claim or "suit" that may result; and

c.    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements to which this coverage applies.

2.    This insurance applies to "Wrongful Acts" only if a claim for damages because of a "Wrongful Act" is first made against an "Insured" during the policy term or Insured's Extended Discovery Period.

a.    A claim by a person or organization seeking damages will have been deemed to have been made when notice of such claim is received and recorded by the "Insured" or by us, whichever comes

11

first.

    b.    All claims for damages because of "Wrongful Acts" arising from the same "Wrongful Act" will be deemed to have been made at the time the first of those claims is made against an "Insured".

55.    The Merrimack Policy does not define the term "civil claim" or "claim."

56.    The Merrimack Policy does not define the term "damages."

57.    Section VI of the Merrimack Policy provides as follows:

SECTION VI – INSURED'S EXTENDED DISCOVERY PERIOD

    A.    In the event this coverage part is subject to any of the following changes:

        1.    reduced limits of insurance;

        2.    restricted coverage provisions;

        3.    increased self-insured retention;

        4.    non-renewal; or

        5.    cancellation.

then such insurance afforded prior to such change shall not apply to "Wrongful Acts" unless claim is made or a "suit" is brought within three years of the effective date of such change.

    B.    The Insured's Extended Discovery Period only applies to "Wrongful Acts" occurring during the Policy period and shall be excess over any other valid and collectible insurance.

58.    On December 27, 2005, the Merrimack Policy was either non-renewed or canceled.

**The Travelers Policy**

59.    Travelers issued a Non-Profit Management and Organization Liability insurance policy, No. 10466807. This policy covers December 27, 2005 through December 27, 2008. (A copy of the Travelers Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "E").

60.    The Travelers Policy provides in pertinent part that Travelers will pay on behalf of the Insureds any "Loss" incurred by the Insureds as a result of any Claim first made against the Insured during the Policy Period for a Wrongful Act.

61.    By virtue of Endorsement No. CIRI 70004 IL (04-00), the Travelers Policy defines the term "Claim" to include "a written demand for monetary relief or non-monetary relief," as well as "a civil proceeding commenced by the service of a complaint or similar pleading."

## COUNT I:  DECLARATORY JUDGMENT
### (Merrimack Policy)

62.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 as and for their Paragraph 62 of Count I, as if fully set forth herein.

63.    Plaintiffs are Insureds under the Merrimack Policy for purposes of the claims made against them in the *Goldberg* Litigation.

64.    The Merrimack Policy obligates Merrimack to pay the sums in damages because of any civil claim first made against Plaintiffs during the Policy term, or during the Extended Discovery Period arising out of any "Wrongful Act" committed during the Policy term.

65.    Travelers has taken the position that a claim was first made against Plaintiffs in October 2005, which contention is denied by Plaintiffs.  As an alternative to its denial, however, to the extent a claim is deemed to have been made in October 2005, such a claim was made during the term of the Merrimack Policy.

66.    In the alternative still, a claim for damages was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

67.    The original Complaint constituted a claim for damages because, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested

13

and/or to pay for completion of said work.

68.     In the alternative still, a claim for damages was first made against Plaintiffs when Goldberg filed her First Amended Complaint.

69.     The First Amended Complaint constituted a claim for "damages" because:

    (a)     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work;

    (b)     On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

    (c)     Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

70.     In the alternative still, a claim for damages was first made against Plaintiffs on or about August 28, 2007, when Goldberg filed her Second Amended Complaint.

71.     The Second Amended Complaint constituted a claim for "damages" because:

    (a)     Counts III and VII specifically demanded judgment for "damages";

    (b)     Count V demanded judgment for monetary relief by demanding that Plaintiffs be required to assume certain costs and by demanding judgment "in such amount as the trier of fact determines would be necessary…";

    (c)     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory relief requested by Goldberg if they were to be compelled to complete the work as requested and/or pay for completion of the work;

    (d)     On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

    (e)     Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

72.     By virtue of Section VI of the Merrimack Policy, coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit was brought during the Merrimack Policy, or within three years of the non-renewal or cancellation of

the Merrimack Policy on or about December 27, 2005.

73.    The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Merrimack Policy's Coverage Agreement.

74.    The exclusions set forth in the Merrimack Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

75.    Merrimack has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

76.    Merrimack disagrees with Plaintiffs' position and has taken the position that the *Goldberg* Litigation does not involve a claim for damages, and does not involve Wrongful Acts during the Merrimack policy term.

77.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Merrimack Policy, and declare that Merrimack has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Merrimack has breached its duty to defend and is liable to Plaintiffs, and that Merrimack is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT II: DECLARATORY JUDGMENT
### (Travelers' Policy)

78.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 61 as and for their Paragraph 78 of Count II, as if fully set forth herein.

79.    Plaintiffs are Insureds under the Travelers Policy for purposes of the claims made against them in the *Goldberg* Litigation.

80.    The Travelers Policy obligates Travelers to pay any "Loss" incurred by Plaintiffs as a result of any Claim first made against Plaintiffs during the Policy Period for a Wrongful Act.

81.    Travelers has taken the position that a Claim was first made against Plaintiffs in October 2005 when Goldberg's attorney sent a letter to a unit owner of Astor Plaza.

82.    The October 2005 letter does not constitute a Claim for purposes of the Travelers Policy and, even if it did, many of the Claims brought in the *Goldberg* Litigation do not arise out of, or relate to, the matters in the October 2005 letter. In fact, many of Goldberg's claims are based upon Astor Plaza's alleged actions or inactions after the October 2005 letter.

83.    A Claim was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

84.    Coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit brought during the Travelers Policy.

85.    The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Travelers Policy's Coverage Agreement.

86.    The exclusions set forth in the Travelers Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

87.    Travelers has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

88.    Travelers disagrees with Plaintiffs' position and it has taken the position that it does not have a responsibility to defend Plaintiffs.

89.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Travelers Policy, and declare that Travelers has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Travelers has breached its duty to defend and is liable to Plaintiffs, and that Travelers is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT III: SECTION 155 – BAD FAITH
### (Merrimack)

90.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 62 through 77 of Count I as and for their Paragraph 90 of Count III, as if fully set forth herein.

91.    At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

§ 155. Attorney Fees.

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action

17

reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:

(a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

92.    Merrimack has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

93.    Merrimack had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Merrimack vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Merrimack fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

A.    Declaring that Merrimack's conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.    That judgment be entered in Plaintiffs' favor against Merrimack for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.    That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

18

## COUNT IV:  SECTION 155 – BAD FAITH
### (Travelers)

94.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 78 through 89 of Count II as and for their Paragraph 94 of Count IV, as if fully set forth herein.

95.    At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

> § 155. Attorney Fees.
>
> (1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:
>
> (a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b)    $60,000;
>
> (c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

96.    Travelers has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

97.    Travelers had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Travelers vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Travelers fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

19

A.   Declaring that Travelers' conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.   That judgment be entered in Plaintiffs' favor against Travelers for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.   That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER**

By: _____

One of Their Attorneys

Anthony G. Barone
David M. Jenkins
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrace, Illinois 60181
630/472-0037
Attorney No.: 34622

20

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| MARGARET GOLDBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. |
| ASTOR PLAZA CONDOMINIUM | ) | |
| ASSOCIATION, DANIEL G. MOHEN, | ) | |
| TRAVIS W. COCHRAN, GEETA | ) | |
| KRISHNAMURTHI, and WILLIAM | ) | |
| S. LODER, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT IN CHANCERY

MARGARET GOLDBERG, by her undersigned attorneys, and complaining of

Defendants ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor Plaza"), DANIEL G.

MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER,

in their capacities as unit owners and Board Members of Astor Plaza, hereby states and alleges as

follows:

## BACKGROUND

1.      This action arises because Goldberg has experienced oppression as a minority

owner, by the actions and proposed actions of the Astor Plaza Condominium Association Board

of Directors, in a number of ways:

- Pursuing funding for a proposed renovation which is prohibited under the
Governing Acts of the Astor Plaza Condominium Association.

- Failure to maintain several portions of limited common elements, which are a
portion of the building's common elements, which affect the Goldberg unit.

*(handwritten note: "What does that mean?")*

1

EXHIBIT
A

Failure to follow a reasonable procedure and process in activities, as well as communication in policies and procedures of the Board, including minutes and meeting notifications, in which Goldberg has a substantial interest.

Pursuance of activities which are specifically prohibited under the Governing Documents of the Astor Plaza Condominium Association; and enforcement of activities in such a way as to oppress Goldberg as a minority owner.

A.    The Parties.

2.    MARGARET GOLDBERG ("Goldberg") was at all times relevant hereto, as she remains, an Illinois resident living in Unit 4E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois (P.I.N. 17-03-105-020-1004).  The record owner of the unit is a Trust over which Goldberg has the power of direction.

3.    ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor Plaza") is a Condominium Association organized under the laws of the State of Illinois, which serves as the association for the condominium located at 39 East Schiller in Chicago, Illinois.

4.    Defendant DANIEL G. MOHEN ("Mohen") was at all times relevant hereto, as he remains, an Illinois resident living in Unit 2E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.  Mohen is the record owner of said unit (P.I.N. 17-03-105-020-1002).

5.    Defendant TRAVIS W. COCHRAN ("Cochran") was at all times relevant hereto, as he remains, an Illinois resident living in Unit 1W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.  Cochran is the record owner of said unit (P.I.N. 17-03-105-020-1005).

6.    Defendant GEETA KRISHNAMURTHI ("Krishnamurthi") was at all times relevant hereto, as she remains, an Illinois resident living in Unit 3W of the Astor Plaza

2

condominium located at 39 East Schiller in Chicago, Illinois.  The Krishnamurthis are the record

owners of said unit (P.I.N. 17-03-105-020-1007).

7.    Defendant WILLIAM S. LODER ("Loder") was at all times relevant hereto, as he

remains, an Illinois resident living in Unit 4W of the Astor Plaza condominium located at 39 East

Schiller in Chicago, Illinois.  Loder is one of the record owners of said unit (P.I.N. 17-03-105-

020-1008).

8.    Defendants Loder, Cochran, Krishnamurthi, and Mohen are serving as members

of the Board for Astor Plaza (although, despite her repeated requests, Goldberg is not in

possession of minutes reflecting such an election).

B.    Astor Plaza's Governing Documents.

9.    Astor Plaza is governed by its declaration and by-laws (Ex. 1)

10.    These governing documents address the handling of common and limited

common elements, and impose a number of limitations on unit owners with regard to their use of

the property.

11.    Written rules and regulations are also required under the governing documents

and are to be distributed to unit owners.

C.    The Association's History With Regard to Goldbergs' Interests.

12.    Over the course of the last five-six years, since most of the new unit owners first

moved into the condominium, Goldberg has found it increasingly difficult to get responses to

even the simplest of her concerns with regard to the building.

13.    On or about October 8, 2005, Goldberg was compelled to retain counsel because,

despite her repeated requests, the Association had continued to disregard her interests as a

3

minority owner and was failing to complete work that was to have been done with regard to a number of common elements affecting her property including the roof, window frames (which had been damaged from prior roof leaks) and other common elements.

14.    Her concerns at the time were summarized in a letter from her counsel to the Association in which she requested that the Board meet to address a number of specific concerns. (Ex. 2)

15.    Although it had ignored prior requests, in late October, 2005, the Board responded to Goldberg's letter, acknowledging her concerns and agreeing to the scheduling of a meeting for November, 2005.

16.    At the time, Goldberg's counsel advised the Board that, to date, she had not received copies of minutes from the most recent meetings, at which the current Association Board had ostensibly been elected, and at which a change to the By-Laws had supposedly been agreed upon which changed the make-up of the Board to include any unit owners who "want to be on the board." *See also* 765 ILCS 605/19 (requiring that minutes be made available).

17.    The unit owners (including anyone purporting to be on the Association Board) met in November, 2005.  Goldberg's counsel then confirmed with the building manager and those in attendance on or about December 7, 2005, what Goldberg's understanding was coming out of the meeting. (Ex. 3)

18.    At the meeting, the unit owners agreed to review the situation with regard to the various issues raised by Goldberg and to address those problems, and agreed "to maintain the existing rules and regulations with regard to the parking space next to the building," there having been a number of disputes with regard to that space and Goldberg having requested that "people

new to the building [be] apprised of these policies [so as to avoid] misunderstandings among neighbors...."

19.     Despite the promises made during the Association's meeting in November, 2005, however, the Association addressed almost none of Goldberg's concerns thereafter.

20.     Instead, over the course of the last year, the Association:

- Disregarded Goldberg's concerns with respect to the front window frame on her unit and the structural integrity of the window casings on the side of her unit. The Association ignored Goldberg's requests for work to be done that had been promised years prior and an update on building management's supposed investigation for almost another year before telling her, first, that the matter would be addressed as part of a building renovation and then, almost immediately thereafter, reneging on that commitment.

- Reneged on its commitment to repair Goldberg's exterior metal balcony (despite the fact that she had helped pay for work done to the other metal balconies at the behest of the Board, and the Board's prior acknowledgment of this inequity), saying that "the Board defines windows and balconies as limited common elements and the responsibility of each unit owner to repair, remodel, replace or maintain." (Ex. 4)

- Effectively set aside Goldberg's complaints with regard to building security. Although the Association's prior building manager did change the lock to the roof door, the Association then ignored her concerns with regard to the front door until a meeting in late 2006. At that meeting, despite her concerns with security, the Association presented a plan that would remove some security from the front of the building altogether, removing the locks from the interior front door so that anyone able to gain access to the street entrance would have access to the entire building.

- Continued to enforce building rules and regulations only on a selective and discriminatory basis. A dog which is substantially larger than allowed for by the governing documents continues to live in the building (over Goldberg's objection). And Board members continue to use the building's only parking space for extended periods of time, despite a requirement in the written rules that unit owners limit their use to three hours at a time (Goldberg, on the other hand, has been threatened with towing or other police action should she violate supposedly new rules she has never been provided with and which she was never advised were being even considered).

5

D.    The 2006 Proposed Renovation.

21.    In September, 2006, Astor Plaza scheduled a meeting to discuss a renovation plan aimed primarily at improving the overall appearance of the front lobby and building facade.

22.    The meeting was scheduled for September 12 and was to involve discussions with regard to an expenditure in excess of $400,000.

23.    Notice of the proposed plan was not provided to Goldberg, however, until the Thursday night immediately preceding the Tuesday meeting.

24.    Despite prior assurances to the contrary, the materials provided to Goldberg just before the meeting disclosed that the Board's plan did not include any work to be done on the window casing in front of her unit or with regard to the window casings on the side of her unit. Instead, the plan called for a new structure to be built over the window casing which would both make it harder to do repairs in the future and increase the cost to Goldberg should she not elect to pay for the work herself during the plan's implementation.

25.    Section V, paragraph 2, (Separate Mortgages) of the Declaration states that "No Unit Owner shall have the right or authority to make or create or cause to be made or created any mortgage or encumbrance or other lien on or affecting the Property or any part thereof, except only to the extent of his unit and his respective ownership interest in the Common Elements."

26.    Yet, the Board proposed and the unit members then agreed to just such funding for the proposed renovation. In the words of the Harris Bank (from which this loan to fund the renovation is sought, September 13, 2006; email memo of Diana R. Larsen) "The collateral for this relationship/financing solution is an irrevocable assignment of all assessments...and a

6

security agreement providing a first lein (sic) against Borrower's corporate assets."

27.    In addition to being prohibited by the Declaration, this type of financing works against the minority interests of owners and beneficiaries, like Goldberg, who have relatively small, or no, personal mortgages.  Furthermore, even if Goldberg prepays the sum required, the bank has a lien on the assessments if other owners default.

E.    The November 2006 Meeting.

28.    Goldberg brought the aforesaid concerns to the attention of the Board at the September meeting and the Board agreed first to designate a representative to meet with her and then, after retaining counsel, advised her that counsel would address the issues with her prior to the next meeting.

29.    The meeting was then continued from its originally scheduled date for a period of one week so that counsel could ostensibly meet with and address Goldberg's concerns.

30.    After a private and unannounced meeting with the Board, however, which the Board later acknowledged took place despite written assurances that there was not going be a meeting that evening, counsel simply reiterated the Board's position and advised Goldberg that the Board intended to follow the rules in their proceedings.

31.    At the next meeting, the Board refused to provide any further details with regard to how the financing would be structured (other than to say that the plan had been somehow changed to correct some of its earlier deficiencies) and allowed only limited discussion with regard to the issues raised by Goldberg.

32.    At the outset of the meeting, in fact, the Board allowed unit owner David Drew time within which to tell Goldberg's attorney (who was in attendance as Goldberg's proxy) that

7

he would ensure that whatever legal action they might elect to pursue would be met with a sizeable investment on his part, of what he called "FU" money, to ensure that they got a lawsuit that would "drag on forever."

33.    Once Drew was done, the Board President closed the discussion, not permitting Goldberg's counsel to say anything in response, before moving on to the next item.

34.    The Board and attending Unit Owners voted to allow an increase in the assessments (by 7-1) despite the fact that was called for by the By-Laws for such a project as was being contemplated would have been a special assessment.

35.    And the attendees voted (again 7-1) to approve financing for the renovation plan despite the fact that no further details were available regarding the alleged change in the financing structure and the Board's refusal to provide any further details with regard to the plan itself.

**F.    Failure to Maintain Common Elements.**

36.    The Declaration defines limited common elements as a portion of common elements (Article III, sections 2, 3, p. 5). These two types of elements differ only in that limited common elements are assigned to specific units. The maintenance, repair, and replacement of Common Elements is the responsibility of the Board, as part of the Common Expenses (Article VIII, section 1, p. 12).

37.    Goldberg has, on several occasions, contributed funds to repair limited common elements to which she has no access.

38.    Between August 2001 and December 2003, for example, she paid a special assessment of over $18,000 to repair balconies assigned as limited common elements to the west

8

side apartments. Goldberg lives on the east side.

39.    Goldberg's special assessment was the highest in the building because of her share in the common elements.  Thus, she paid more to fix balconies to which she has no access or use than any of the apartments that benefit from these limited common elements.

40.    Goldberg has three deteriorating common (including limited common) elements, however, which have not received equal consideration.

41.    Goldberg has a balcony which is substantially rusted.  She is afraid to use it. There is no assurance that the problems with this balcony will be addressed in the proposed renovation.

42.    Goldberg has a deteriorating window frame in the front bay window.  The problem, first pointed out in July 2004 by her painter, was verified a month later by an inspector hired by the then-employed management company.  The current Board also sent out an inspector in 2006.  Goldberg needs this frame, and the window enclosed in it, replaced in an imminent manner. Despite the danger of this situation, the Board's proposed renovation does not address the situation.

43.    The Board's memorandum from September, 2006 (attached) purports to redefine what constitutes a limited common element, stating that "The Board is considering the option of having the Assoc. assume responsible (sic) for the front bay windows and define them as common elements."

44.    The side window frames are badly deteriorated in Goldberg's apartment. In fact, pictures dating from 1991, show snow piling up in the interior of her apartment, coming through the window frames.

45.    Notwithstanding a long history of discussion with regard to these window frames, however, and assurances from both the current and prior Boards, the current Board now seeks to avoid any responsibility for the window frames by summarily excluding them from the building's historical and published definition of what constitutes a common element.

46.    This disregard for Goldberg's legitimate claims constitutes an oppression of her minority interests.

47.    The Board has a duty, as set forth in the Governing Documents to tend to the "[o]peration, care, maintenance, replacement, and improvement of the common elements."

48.    The discussion at the September, 2006 meeting, however, as well as the aforesaid memorandum, reveal that cosmetic upgrades, such as applying carpentry details to hallways, are being planned at considerable expense, while the structural and functional concerns raised by Goldberg are being ignored.[1]

G.    Failure to Provide and Communicate Reasonable Procedures.

49.    The Board has a duty to carry out policies in conformity with the Declaration, which includes the bylaws.  The Board has not performed this duty.

50.    For example, in the aforesaid memorandum, Board president, Cochran, states that "The Board defines windows and balconies as limited common elements and the responsibility of each unit owner to repair, remodel, replace, or maintain."

51.    The Governing Documents, however, provide that limited common elements are the responsibility of the association.  The Board may not change this without going through a

---

[1] Goldberg is not the sole owner suffering from such policies. Mark and Linda Karno, owners of another unit, filed legal action against the Board for failure to cover plumbing expenses of the common elements, which they had to pay.

clearly defined process, which is detailed in the Declaration, Article XIX, paragraph 5, p. 37).

52.    No such process of change has been effected by the Board.

53.    The Board does not fulfill its duties to communicate about meetings and policies.

54.    The Declaration states (Article XIV, paragraphs c and e, page 24) that Board

members should include "a secretary who shall keep the minutes of all Board meetings" and

"Meetings of the Board shall be open to any Unit Owner, notice of any meeting shall be mailed at

least forty-eight hours prior thereto, unless a written waiver of such notice is signed by the person

or persons entitled to such notice."   Board meetings are scheduled to take place four times

annually on specifically designated dates, according to the Governing Documents.

55.    No minutes of meetings have been distributed by this Board, however, and

repeated requests by Goldberg for such minutes have gone unheeded.

56.    Notification of Board meetings is rarely given and meetings are not held when and

as required by the Governing Documents.

57.    Communication with regard to the proposed renovation and its funding has not

been adequate.   For example, a complex packet describing the proposed improvement programs

was dropped at Goldberg's door on Thursday night, September 7. The meeting to vote on this

improvement (totaling approximately a half-million dollars) was called for September 12.  The

notice provides that "We present this to the owners, in advance of the September 12 BOD

meeting so we can vote on this initiative at this meeting (p. 5)."

58.    Such notice is unreasonable (Goldberg was scheduled to leave town on September

8 for the weekend).  Moreover, the proposal was vague and uninformative, particularly with

respect to the common elements assigned to the Goldberg apartment.

11

59.     Attempts to meet with the Board, or a representative thereof, to gain information, were first put forth by a Board member at the Sept. 12 meeting. However, when Goldberg pursued these attempts, she was first asked to put the concerns in writing, which she did, and then told (emailed memo, October 5, 2006) "neither I nor the BOD would meet you separately with you….The purpose of the meeting on Oct. 30 is to answer these questions and then vote on the proposals."

60.     In another example of inadequate communication, a memo dated September 29, 2006, from Bryan Cagan, property manager, proposed an assessment increase. However, it was unclear whether the increase was to be a special assessment (as Goldberg believes it is), or a permanent increase.

61.     When the unit owners finally met to discuss the increase, they agreed to do it *so?* retroactively as a regular assessment, despite the fact that its admitted purpose was to fund a specific project (The increase was also retroactive and contrary to the Governing Documents inasmuch as those documents do not allow for a regular assessment to be levied for purposes other than those specifically set forth in the documents.)

## H.    Pursuance of Activities Specifically Prohibited under the Governing Documents.

62.     The Declaration (including bylaws) has a number of specific rules, which are being violated, often by Board members. *dec doesn't have rules*

63.     Article XVII, paragraph 6, (page 34) specifically prohibits certain types of animals: "No animals shall be raised, bred or kept in any Unit, except for dogs which may be carried by an adult person…" *must not a complaint*

12

64.    Yet one Board member has, despite Goldberg's objections, had a large dog in the apartment, with no action by the Board. This situation has continued for over a year.

65.    Paragraph 5 of the same act states "Unit owners shall not cause or permit anything to be placed on the outside walls of the building and no…television antenna shall be affixed to or placed upon the exterior walls or roof or any part thereof, without the prior consent of the building.

66.    Another unit owner, once again without consequence, violated this provision in three ways: Christmas decorations hung from the roof and draped over the front of the building; lights on the roof; and a satellite dish on the roof.

67.    The storage of bicycles in common areas is specifically prohibited (paragraph 9). Yet unit owners, without penalty, continually store bicycles in such places.

68.    Article XIV, section s (p. 26) of the Declaration states that written notice of rules and regulations shall be given to all unit owners.

69.    Yet, Defendant Loder has stated, supposedly on behalf of the Board, that the house rules in effect since early 2004 have been rescinded (emailed memo, September 8, 2006) and that some new rules have been incorporated into the Bylaws (despite the fact that no meeting was ever called for this purpose and the By-laws have remained unchanged since 1999).

70.    Loder also advised Goldberg of a supposed new rule on parking, which had never been distributed.

71.    The west-side parking space represents a particular problem for Goldberg, and unit owners in general.

72.    This small space is clearly defined, in the most recently published rules, as

13

intended for use for short periods of time by owners, as well for construction trucks during renovation and deliveries.

73.    In the past two years, however, a number of unit owners (including board members) have consistently violated this policy by using the space for their vehicles overnight.

74.    In one instance, when this was pointed out to the Loder apartment, they strongly objected, calling their inability to park overnight there (i.e., enforcement of the written house rule) an infringement of their safety, and continued to violate this rule.

75.    When Goldberg noted, in August 2006, that another vehicle was parked there almost continuously for a period of over 10 days, she called Loder who told her that the rule had been changed, and now unit owners, and only unit owners, could park there as long as they wanted.

76.    Goldberg then contacted Cochran, the association president, who told her that the car in question belonged to a friend.

77.    Cochran told her that any car, as long as it was associated with a unit owner, could park indefinitely.

78.    This verbal enunciation of the supposedly applicable rule contradicted both the written house rules of 2004 and the verbal version given by Loder.

79.    As this was apparently the rule in force (Cochran, the Board president, had parked there with the knowledge of the Board), Goldberg used this space to park her housekeeper there for a few days.

80.    On Friday, September 8, 2006, however, Diane Melton, Loder's wife, called the Goldberg household and ordered the housekeeper to move, threatening to call a towing company.

81.    Goldberg, en route to St. Louis, called Melton for clarification; Melton screamed at Goldberg, and finally hung up the telephone.

82.    Later that day, for the first time, Goldberg was notified by Loder that the new (unwritten) "rule," included a provision that the gate be kept closed and that only unit owner's vehicles be parked in the space.

83.    The parking rules of 2004, still the only rules, were thus continuously violated by Board Members with no consequences and they continue to informally change the rules to satisfy their own interests, at the expense of Goldberg (and possibly other unit owners).

84.    The Association's counsel, who was supposedly retained to address these concerns with the Goldbergs in October-November, 2006, confirmed that the written rules are required to be followed (with regard to the parking place), but then refused to confirm what those rules actually are.

## COUNT ONE: OPPRESSION

1-84.    Goldberg hereby incorporates Background ¶¶1-84 as ¶¶1-84 of this Count One.

85.    805 ILCS 5/112.50 provides in relevant part as follows:

A Circuit Court may dissolve a corporation:

(b)    In an action by a member entitled to vote, or a director, if it is established that: ***

    (2)    The directors or those in control of the corporation have acted, are acting, or will act in a manner that is *** oppressive *** [or]

    (3)    The corporate assets are being misapplied or wasted. ***

86.    805 ILCS 5/12.56, moreover (which courts have considered in the context of claims brought under 805 ILCS 5/112.50), provides that:

15

(a)     In an action by a shareholder in a [privately held] corporation *** the Circuit Court may order one or more of the remedies listed in subsection (b) if it is established that: *** (3) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is *** oppressive *** with respect to the petitioning shareholder whether in his or her capacity as a shareholder, director, or officer; or (4) The corporation assets are being misapplied or wasted.

(b)     The relief which the court may order in an action under subsection (a) includes but is not limited to the following:

    (1)     The performance, prohibition, alteration, or setting aside of any action of the corporation or of its shareholders, directors, or officers of or any other party to the proceedings;

    (2)     The cancellation or alteration of any provision in the corporation's articles of incorporation or by-laws; ***

    (6)     The appointment of a custodian to manage the business and affairs of the corporation to serve for the term and under the conditions prescribed by the court; ***

    (12)    The dissolution of the corporation if the court determines that no remedy specified in subdivisions (1) through (11) or other alternative remedy is sufficient to resolve the matters in dispute. ***

(c)     The remedies set forth in subsection (b) shall not be exclusive of other legal and equitable remedies which the court may impose.

(d)     In determining the appropriate relief to order pursuant to this Section, the court may take into consideration the reasonable expectations of the corporation's shareholders as they existed at the time the corporation was formed and developed during the course of the shareholders' relationship with the corporation and with each other.

87.     In this case, the defendants have acted in a manner that is oppressive with regard to Goldberg's interest in the building, in dereliction of the obligations imposed upon them by the governing documents, and in a manner likely to result in unnecessary waste and expense that will need to be wrongfully borne by Goldberg.

88.    Goldberg therefore respectfully requests that this Court grant her relief under §§112.50 and 12.56 (b) including the entry of an order:

*not aum by Act*

Requiring that the Board complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

*not what it seeks*

Prohibiting Astor Plaza from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners other than those specifically seeking financing in order to pay their share of any assessments; and/or

Appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same.

89.    805 ILCS 5/12.56(d) provides that:

*n/a*

In determining the appropriate relief to order pursuant to this Section, the court may take into consideration the reasonable expectations of the corporation's shareholders as they existed at the time the corporation was formed and developed during the course of the shareholders' relationship with the corporation and with each other.

77.    Goldberg therefore also requests, to the extent necessary to demonstrate the veracity of her claims hereunder, that she be granted discovery and an opportunity to present testimony and other evidence with regard to her reasonable expectations as developed during the course of her over 20 years' involvement as a unit owner in the building.

WHEREFORE, MARGARET GOLDBERG, by her undersigned attorneys, and complaining of Defendants ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor Plaza"), DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, in their capacities as unit owners and Board Members of Astor Plaza,

*[handwritten: only public for disclo...]*    *[handwritten: Seeks an order]*

88.    Goldberg therefore respectfully requests that this Court grant her relief under §§12.50 and 12.56 (b) including the entry of an order:

- Requiring that the Board complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

- Prohibiting Astor Plaza from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners other than those specifically seeking financing in order to pay their share of any assessments; and/or

- Appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same.

89.    805 ILCS 5/12.56(d) provides that:

In determining the appropriate relief to order pursuant to this Section, the court may take into consideration the reasonable expectations of the corporation's shareholders as they existed at the time the corporation was formed and developed during the course of the shareholders' relationship with the corporation and with each other.

77.    Goldberg therefore also requests, to the extent necessary to demonstrate the veracity of her claims hereunder, that she be granted discovery and an opportunity to present testimony and other evidence with regard to her reasonable expectations as developed during the course of her over 20 years' involvement as a unit owner in the building.

WHEREFORE, MARGARET GOLDBERG, by her undersigned attorneys, and complaining of Defendants ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor Plaza"), DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, in their capacities as unit owners and Board Members of Astor Plaza,

17

respectfully requests that this Court enter an order, after a reasonable period of time for discovery and the conducting of an appropriate evidentiary hearing, which

- Requires that the Board complete the work agreed upon in 2005, including work with regard to the window casing, in front of Goldberg's unit, work on the side window frames, and her balcony;

- Prohibits Astor Plaza's unit owners from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the by-laws;

- Appoints a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same; and

- Grants Goldberg her costs of suit and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

## COUNT TWO: DECLARATORY RELIEF

1-84.    Goldberg hereby incorporates Background ¶¶1-84 as ¶¶1-84 of this Count One.

85.      § 2-701 (Declaratory Judgments) provides in relevant part as follows:

(a)    No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested. The foregoing enumeration does not exclude other cases of actual controversy. ***

(b)    Declarations of rights, as herein provided for, may be obtained by means of a pleading seeking that relief alone, or as incident to or part of a complaint, counterclaim or other pleading seeking other relief as well, and if a declaration of rights is the only relief asked, the case may be set for early hearing as in the case of a motion.

18

impairment of the Association's resources, in which Goldberg has an interest, and there is thus a threat of injury to Goldberg's rights and interests warranting declaratory relief.

WHEREFORE, MARGARET GOLDBERG, by her undersigned attorneys, and complaining of Defendants ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor Plaza"), DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, in their capacities as unit owners and Board Members of Astor Plaza, respectfully requests that this Court enter a declaratory judgment declaring the parties rights and obligations under Section V, paragraph 2 of the Declaration, including specifically a declaration to the effect that this Article serves to limit Unit Owners in their ability to pursue financing in any way, form or fashion that would be likely to result in an encumbrance of any kind that would affect the "Property or any part thereof." Goldberg further requests that she be granted her costs of suit and such additional relief as the Court deems just and proper or to which she may otherwise be entitled as a matter of law.

Respectfully submitted,

MARGARET GOLDBERG

By: _____
One of Her Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES LLC
1131 Wheaton Oaks Court
Wheaton, Illinois 60187
630-588-1131
Attorney Code: 39148