07 C 6593

JUDGE GOTTSCHALL
MAGISTRATE JUDGE KEYS

regarding this demand.  Ms. Goldberg does not prefer this course of action and is contemplating the possibility of legal action only because circumstances appear determined to require it.  Your commitment to a less adversarial resolution, which serves the interests of both my client and the building as a whole, would be most welcome.

Very truly yours,


Ted A. Donner

TAD/td

To:  All Unit Owners                                                                 10.23.05

Since there has been a recent turn over in several units, it is time we all met each other as friendly Unit Owners.. The By-Laws state that each Unit Owner is on the Board of Directors. Our Unit Owners want to work together in a most amiable and friendly manner.

Peggy Goldberg has decided not to be the on the Board of Directors and has many concerns she would like to discuss. We, Unit Owners and members of the Board of Directors should work to accommodate each other.

Please indicate your concurrence to a meeting by signing by your Unit:

Then call David Drew, Bill Loder, or Peggy Goldberg. Peggy is especially anxious to get her concerns met so I suggest you introduce yourself to her because she wants to be heard immediately. Kass Management has all phone numbers.

Please sign opposite your Unit to show your concurrence to scheduling a Board Meeting and return to David Drew's unit, 2W.

Unit 1W_____

Unit 1E_____

Unit 2W_____*David Drew*_____

Unit 2E_____

Unit 3E_____

Unit 3W_____

Unit 4E_____

Unit 4W_____

Respectfully,

David Drew
2W

EXHIBIT
3



203 North LaSalle Street
Suite 2100
Chicago, Illinois 60601
Phone 312-917-1131
Fax 312-558-1369

1131 Wheaton Oaks Court
Wheaton, Illinois 60187
Phone 630-588-1131
Fax 630-682-1131

www.donnerco.com

FILE

December 7th, 2005

**BY: REGULAR MAIL & FACSIMILE 773/935-4608**

David Carlson
Kass Management Service, Inc.
2000 N. Racine
Chicago, IL 60614

    *Re:    Astor Plaza*

Dear David:

      I am writing to follow up with you on the various issues discussed at the last meeting. Our first and foremost concern is, given that it is now early December, the windows were supposed to be washed and inspected a week ago. As you know, the windows had not been washed for many years and Ms. Goldberg, my client, has been very concerned about the condition of the bay window in front of her unit. To my knowledge, no one has done the inspection or cleaning so far although the weather is turning dramatically and we are thus very concerned that the leakage problem be attended to. The unit owners who were present at the meeting agreed that this problem should be addressed immediately and we are therefore troubled by the fact that you have not been in touch since December 1st to confirm the results of this inspection.

      On a related note, as you should recall from the meeting, the board confirmed that a proposal for the window frames had been received in August of last year which, you assured us, you would get from your files and circulate. The temperature outside is now in the single digits and this problem therefore needs your immediate attention. Would you therefore please contact me as soon as possible and provide me with both a copy of the original proposal and the inspection results that were due last week?

      In addition, I would appreciate it if you would let me know where things stand with regard to each of the following items which were discussed at the meeting and which we identified as concerns in my letter to the board of October, 8th, 2005:

1.    **Supports for window frame.** In addition to the above, I should reiterate that, in my original letter, we pointed out to the board that the condition of the window frames is so precarious as to constitute a possible risk to passers by (if not the Goldbergs) should the frame completely fail. The association has thus been on notice for two months at least of this concern and the risks involved, so I would expect this to be something that would be at least close to the top of your priority list.

2.   **Exterior metal balcony.** As David Drew said during the course of the last meeting, although my client contributed to the cost of repairing or replacing the metal balconies on the west side of the building, the balcony outside the Goldberg's unit was somehow "left out." I recall that someone suggested that gutters might be used to reduce the problem on the west side, and that all of the balconies will probably need to be repaired or replaced again in the not too distant future. You also said that you were going to "look into this." My understanding is that the onus is on you to look into taking care of the Goldberg's balcony and I would therefore appreciate knowing the status of where things are on this score as well.

3.   **Window frame and possible mortar concerns through east side windows.** During the course of the meeting there was discussion regarding the fact that the original windows were aluminum and that some people have thus added inside storm windows to reduce air leakage. During the meeting, as you know, I pointed out that my client has replaced her windows altogether and that this is therefore not, in our opinion, a problem that involves just the windows themselves but which, instead, must necessarily involve the frames. This was, again, something I understood would be looked into during the inspection last week. Could you please let me know you conclusions?

4.   **Unsafe lock situation.** I was glad to hear that your predecessor took care of replacing the locks to the door on the roof and that the front door keys should now work on the roof.

5.   **The roof.** As you know, my client submitted a proposal from the building's chosen roofer that would take care of maintenance and inspection problems for what then amounted to $650 per year, a cost that would translate to roughly $80 per year per unit. You agreed that you would gather any other proposals and circulate all of these before the next meeting, a meeting which we understand is to be scheduled for just after the first of the year. As you should recall, the idea that the unit owners on the top level of the building have somehow agreed to indemnify everyone else in the event of a roof problem, as you know, is one that I have confirmed is not reflected in any documentation that would be relevant since Winward's work on the roof a couple years ago. To the contrary, having previously incurred a loss of almost $20,000 because of roof leaks, my client has been, as she remains, very concerned that the association live up to its obligation to ensure that the roof is properly maintained. I would therefore greatly appreciate it if you would circulate the proposals you referred to during the meeting as soon as possible. The risk to the association, should anything happen before a contract is in place, could be substantial and I must therefore beseech you to add this item to your list of priorities.

6.   **The front door.** A great many decorating plans were discussed at the meeting, and we were glad to hear that there is consensus for the development of a plan that would improve the look of both the front door and the lobby generally, based on designs that would compliment, if not follow, the top floor lobby. Have you heard anything more on this since the meeting?

7.   **Lack of general maintenance.** We are more concerned with the immediate need for

improved maintenance in the building than with design plans. This is a problem you have agreed to "look at" before the next meeting. Have you made any progress?

8.    **Lack of communication.** In my letter of October 8th, 2005, I pointed out that my client has not been receiving minutes or financial documents as she should be. You confirmed at the meeting that you were going to "get a list together" which you would then circulate to everyone by e-mail. You said that you would confirm receipt of these e-mails so as to make sure that you had a complete list. We have received no such e-mail. We have also still not seen the minutes from the board meeting in March 2005 or thereafter. At some point, as I understand it, the by-laws were ostensibly amended so that all unit owners would be "allowed but not required to join the board." As I read the document, no such amendment should have been considered let alone approved without notice to the membership as a whole. I have still not seen any of the records that would confirm that amendment.

9.    **Lack of financial reserves.** My understanding is that Dan's new budget created a reserve for the first time in some while. In addition, we were also advised at the meeting that there is a roughly $10,000 reserve right now in the operating account. Is this reflected in the current financial statements? Could you please provide us a copy of those current financial statements soon so that we have a chance to review them prior to the next meeting?

10.    **Rules & Regulations.** My clients were glad to here that the unit owners present at the meeting agreed to maintain the existing rules and regulations with regard to the parking space next to the building. We were disappointed to learn, however, that people new to the building were not being apprised of these policies, something which could continue to result in misunderstandings among neighbors if not addressed. My understanding from the meeting was that these rules and regulations were going to be circulated to ensure that everybody is aware of the guidelines that everyone has agreed to abide by for each others mutual benefit. I also understood there to be consensus for the idea that the parking spot be reconfigured so that the garbage cans could be pushed back and room made for two cars. There is still some misunderstanding, we believe, with regard to what rules apply. I would therefore appreciate your confirming as soon as possible that everyone received a copy.

David, my clients do not mean by this letter to begin what they hope is a long relationship with you on the wrong foot. I recognize that you are new to the building and that, were you to be inundated with requests such as this on a regular basis from everyone in the building, it could become increasingly more difficult for you to keep up. Nevertheless, as you know, last months meeting was called originally to address the problems identified in our letter of October 8th, 2005, and I am therefore anxious to ensure that your office follow up on each of these items in a timely manner. Ms. Goldberg would not have felt it necessary to involve me, and I would not have needed to write to the board in the first place, had these problems not been ongoing for some time. It is for that reason that I warned you, after the meeting, that I would be contacting you (as I am now) if I did not hear from you soon after the meeting. If there is anything I can do to

facilitate your efforts, please do not hesitate to let me know.  I will otherwise look forward to hearing from you as soon as you have reviewed this letter and confirmed the status of each of the aforesaid items.  Thank you again for efforts.

Best Regards,


Ted A. Donner


cc:     Astor Plaza board
        Peggy Richek-Goldberg



TAD/hg

## Ted Donner

**From:** Gabriella R. Comstock [grc@kkmcondolaw.com]
**Sent:** Thursday, November 16, 2006 10:35 AM
**To:** Ted Donner
**Subject:** RE: Astor Plaza Condo Assoc

I have not received anything yet, I certainly will let you know once I do. Thanks

Gabriella R. Comstock
Attorney at Law
KNUCKLES, KEOUGH & MOODY, P.C.
1001 East Chicago Avenue
Suite 103
Naperville, IL 60540
(630) 369-2700
(630) 369-9279 (fax)

**From:** Ted Donner [mailto:tdonner@donnerco.com]
**Sent:** Thursday, November 16, 2006 10:31 AM
**To:** Gabriella R. Comstock
**Subject:** RE: Astor Plaza Condo Assoc

Please let me know, when you have a minute, whether you have received and had a chance to review the complaint (it was sent by FedEx). I would like to discuss logistics, i.e. initial court appearances, scheduling on briefs, etc., whenever you have time. Presumably, you will be filing an appearance in short order?

Two other concerns:

(1) A Black BMW, liense plate 619 9556 was in the building's only parking space for most of the evening last night and this morning. The written rules place a three hour limitation on use of the space, as you and I discussed. So, it amazes me no end that, even in the face of a lawsuit, and after your reviewing these matters with me just weeks ago and confirming that there have been no rule changes, Board members continue to treat this as a building they own and in which my clients are merely tenants (well, okay -- that may not be a prefect analogy, were the Goldberg's tenants, the Board at least wouldn't be able to try and hold them up for the kinds of money they're seeking).

(2) Of course, we still have not received any of the minutes we requested, including the minutes from this most recent meeting.

-Ted.





# KNUCKLES, KEOUGH & MOODY, P.C.

1001 East Chicago Avenue, Suite 103, Naperville, IL 60540
Telephone (630) 369-2700          Facsimile (630) 369-9279
www.kkmcondolaw.com

Writer's Direct Dial   (630) 369-2700 x209
Writer's Email   grc@kkmcondolaw.com

May 25, 2007

Mr. Ted Donner
The Law Offices of Donner & Co. & LLC
1131 Wheaton Oaks Court
Wheaton, IL 60187-3051

   RE:   *Goldberg v. Astor Plaza Condominium Association*
         *Case No. 06 CH 24682*

Dear Mr. Donner:

   Pursuant to your request on April 27, 2007, enclosed please find the Astor Plaza Association Board Meeting Minutes for March 6, 2006; September 12, 2006; November 6, 2006; December 18, 2006; and March 20, 2007. These minutes have not been approved yet by the Board. Please be advised that at the next scheduled Board Meeting, the Board will approve these minutes. Yet, these are the minutes that the Board will vote to approve.

   If you should have any questions, please do not hesitate to contact me.

Very truly yours,

*Gabriella R. Comst*

GABRIELLA R. COMSTOCK
Attorney at Law

GRC

Enclosure

S:\data\client\Astor Plaza\Goldberg\Mail\opposing counsel\5-25-07grc.minutes.donner.wpd



# ASTOR PLAZA ASSOCIATION BOARD MEETING
# MINUTES
# MARCH, 6, 2006

<u>Attendees:</u>
Perry Glodberg
Dan Mohen
Travis Cochran and Agnes
Geeta Krishnamurthi
Bill Loder and Diane Melton
Paula Krasny

<u>Bill Loder</u>
Required to hold certain number of meetings
Required to follow by-laws
Purpose of meeting is to elect the board
3-5 members with president, secretary and treasurer

<u>History — Dan Mohen</u>
Who would like to volunteer to sit on the board?
Denis Mola — previous president
Dan Mohen —
Mark Karno, Mary Martini, Dennis Mola.  Then everyone had
A spot on the board, but Perry didn't want on it.
Paula withdrew
Mark left, Jerry left, Mary sold out, Jerry sold out, and Dennis sold out.

Board members and association members —board members are elected, association
members are by percentage of ownership.

All issues over $5,000 require a vote.

<u>Bill Loder</u>
Asked for nominees for office.
David Drew, Perry and Peggy, Paula does not want to be board members.

Bill nominated Travis as President
Travis and Paula nominated Bill.
Diane seconded the nomination.   All in favor, so Travis is now President.

Bill nominated Dan as Treasurer
Geeta nominated as Secretary
Bill nominated Dan for post of treasurer and Geeta for Secretary
Paula seconded the nominations.  All in favor voted yes. Vote carries.

Management Committee – needs two members
Bill and Dan

Purpose of meeting done.

### Building improvements

Update:

Issues with structure
Perry:  Common elements – windows – major problem in their unit.  Frame around is
Common element – is it inherent to the building?

Everyone agrees that a structural engineer needs to inspect the building to determine
If any issues prior to any building improvement

### Notice Letter from Mark Karno

1.   Board Members to determine if Mark Karno owns the basement.
2.   Get real estate attorney to research

### New Resolutions Adopted

It was determined that effective immediately the "Rules Of The Association" adopt by a
past board and not dated are null and void.
They are replaced by rule that any construction, alterations, improvements or
betterment to any of the common area's, to include limited common areas, requires the
approval of the Board of Managers.
The newly elected Board will discuss the current rules and make its determinations at a
later date.

# ASTOR PLAZA BOARD MEETING
## September, 12. 2006
## 7 P.M.
## UNIT 4 W

**ATTENDEES:** Bill Loder, Travis Cochran, Dan and Gerri Mohen, Geeta Krishnamurthi, David Drew, Mark and Linda Karno, Ted Donner representing the Goldberg's, Erik Johnson, architect.

**AGENDA:** Building Renovation Plans

David Drew thanked the Board and other members for all the time and effort they have put in the last 4 months for the renovation project.

Travis Cochran introduced Erik Johnson the architect

Erik Johnson then used the plans to describe them in detail. The base of the façade to be covered in Indiana Grey limestone with a wrap around cornice and crown molding made of Fiberglass.
The bays on the windows will also be changed to the same fiberglass with new spandrels with raised panels.
Rosettes of limestone will be placed on the front of the building to break up the plain façade.

Mark Karno asked why the limestone was only to be used on the base and not all the way up to the roof. Erik explained that the cost would be prohibitive.
There will be new lanterns on either side of the building as well as new planters in the front.

As for the interior Erik explained the plan to install wainscoting in the entryway with wrought iron or wood railing.
The ceiling will be a barrel vault with up lighting and chandeliers.
The landing in front of the elevator will also have up lighting and wainscoting.

David Drew suggested that the first set of stairs going up from the landing be carpeted so as not to clash with the new marble floor.

Erik also mentioned that there will be new set of doors and he is trying to figure out how much it can be raised so as to give it some elevation.

Mark wanted to ensure that the contractor limits the # of hours his trucks will be parked in the front.  He also wanted to know if there will be a water barrier added to the new foundation that has to be poured for the planters in the front and if the brick can be matched.
Erik assured him that all of those issues will be addressed.

Bill Loder stated  that a structural engineer as been consulted and there were a few minor issues under the first floor terrace that we need to fix during this construction.

He then explained that four bids had been presented to the Board and the lowest one was accepted and reworked to fit the budget.  Cagan Management will oversee the construction of the interior for a fee.  The cost of the interior is going to be $150,000.

Dan Mohen reiterated that the board was aware of cost overrun issues and so the decision was made to get individual sub contractors and negotiate better prices from them as opposed to one general contractor.

Ted Donner the attorney representing the Goldberg's (unit 4 E) mentioned that his clients had two major issues:
1.  The definition of windows as common elements
2.  The financial obligations of his clients for the financing of the construction.
He stated that his client's windows were never fixed or replaced after promises made to them.

Bill Loder replied that the By-laws do not distinguish clearly whether the windows are common elements but the by-laws refer to them as the obligation of each owner. The BOD obtained Legal, Building Management and surveyed other assoc. to find this is the norm.
In the past this issue had been raised and subsequently other unit owners have replaced or fixed their own windows.

Ted then brought up the issue of financing of the project and since the Goldberg's' were interested in paying the entire amount of their share

in cash they did not want to be held liable if one or more owners default on their payments.

Bill replied that if there is a default by one owner the bank will hold the Association responsible which then has to take measures to collect from those owners just like they have to do so now if the owners do not pay their assessments on time.

Ted Donner said that his clients did not approve of the Board encumbering the owners of the building with a loan.

While the construction of the exterior is taking place the unit owners will be given the opportunity to replace or repair their windows, cost to be borne by each owner. This will considerably lower the cost of the window installations.

The association has identified window companies that can do the project.

Ted Donner then said that he felt that the By-laws would have to be changed before this construction project is undertaken and the financing methods used by the Board violate the interests of his clients.

The Board then decided that they would consult their attorneys and will schedule a vote at a later date.

The meeting was adjourned at 9:30 p.m.

## ASTOR PLAZA ASSOCIATION OPEN MEETING
### November 6, 2006
### 7:00 P.M.

**ATTENDEES:** Bill Loder, Diane Melton, David Drew, Dan Mohen, Paula Krasny, Travis Cochran, Geeta Krishnamurthi, Ted Donner (representing Goldberg's), Bryan Cagan

Travis Cochran introduced the agenda for the meeting which was the vote on the exterior and interior renovation and increases in assessments.

David Drew stated his surprise at the intention of the Goldberg's to sue the Association and the cost of replacing the windows will be a lot less than the cost of a lawsuit.

Motion to renovate interior and exterior of the building. Motion carries with a 7-1 vote with the Goldberg's voting no.

Next item on agenda: Increase in assessments based on percentage ownership in building. Ted Donner stated that the Board could not borrow on behalf of the Association. Bill Loder replied that the Board had obtained legal consent and according to the by-laws of the association as well as Illinois condo laws the Board had the right to obtain loans for building renovations.

Motion to increase in monthly assessments.
Motion carries with a 7-1 vote with the Goldberg's voting no.
Meeting adjourned at 7:30 P.M.

**Astor Plaza Condo. Assoc.**
**Board of Directors/Owners Meeting**
**December 18, 2006 Minutes**

**Attendees:** Travis Cochran, Bill Loder, Geeta Krishnamurthi , Dan Mohen, and Bryan Cagan (Property Manager)

- President Travis Cochran brought the meeting to order

- In the first order of business the Board reviewed the 2007 proposed budget.

- The Board unanimously approved the 2007 proposed budget.  Cagan will distribute a notice reminding all owners of the assessment increase.

- The Board discussed formulating a new set of Rules and Regulations.

- The meeting adjourned at approximately 7:40 PM.

Astor Plaza Condo. Assoc.
**Board of Directors/Owners Meeting**
**March 20, 2007**

**Attendees:** Travis Cochran, Bill Loder, Geeta Krishnamurthi by Written Proxy (Bill Loder), Dan Mohen, Mark and Linda Karno, Paula Krasny, Ted Donner (Attorney/Proxy for Margaret Goldberg), Diane Melton, and Bryan Cagan (Property Manager) | - - - - - - - - - - - - - - - - - - - - - -

Comment [BC1]: Dan and Travis we should add your wives as well.

- President Travis Cochran brought the meeting to order at 7:07 p.m

- In the first order of business Bill Loder read the revised Rules and regulations. Each owner was given an opportunity to discuss any concerns, revisions, edits and recommendations.

- The Board voted unanimously to adopt the Rules and Regulations as presented, recognizing the possibility of minor edits to qualify certain rules which may be incorporated at a future board/owners meeting. Specifically, the minor edits under consideration pertain directly to sections of the approved Rules on Alterations, paragraph 3 and 4. The Board decided to seek legal advice to assure paragraph 3 and 4 as stated meet the Association's intended needs. Any potential amendments/changes to paragraph 3 and 4 will be incorporated as necessary in their revised form at the next BOD/Owners meeting.

- The next order of business was the discussion and approval of a special assessment of $25,000 to cover the association's legal expenses associated with the pending legal actions brought by the Karno's and the Goldberg's. Exceptions to this assessment were expressed by the Karno's and Ted Donner on behalf of the Goldberg's.

- The special assessment was passed unanimously by a vote of the Board.

- The final order of business was an update to the installation or DIRECTV and some recommendations to how to wire for this service.

- The Board was also asked to consider approval of a renovation project submitted by Mark Karno. The Board will attempt to complete its review of the project and respond in the next week.

- The meeting adjourned at 8:40 p.m

X-Symantec-TimeoutProtection: 0
X-Symantec-TimeoutProtection: 1
X-Symantec-TimeoutProtection: 2
X-Symantec-TimeoutProtection: 3
X-Symantec-TimeoutProtection: 4
X-Symantec-TimeoutProtection: 5
X-Symantec-TimeoutProtection: 6
X-Symantec-TimeoutProtection: 7
X-Originating-IP: [68.142.229.104]
From: "Bill Loder" <wm.loder@sbcglobal.net>
To: "Perry & Peggy Goldberg" <mrichek@ameritech.net>
Cc: "Lachman &Geeta Kristamurthi" <lkmurthi@aol.com>, <rpmohen@hotmail.com>,
    "Travis Cochran" <tcochranfx@yahoo.com>
Subject:
Date: Sun, 13 Aug 2006 09:51:26 -0500
X-Mailer: Microsoft Office Outlook 11
Thread-Index: Aca+5/N9Ehj3GAQdSa+PISUu0sj8Zw==

Peggy, per our conversation I wanted to bring you up to date on where we are with all the structural and cosmetic plans to update the building and send some of the renovation ideas for your review. Unfortunately for some reason I don't have a drawing of the interior but our intent is to follow what was done on our floor down the stairs to the foyer. The entrance and foyer will also be done with new flooring, lighting, doors, moldings, and a look similar to the Ambassador down the street on the walls etc. We have a paper drawing and will be able to show you when we have finalized plans.

As for all the other issues let me list and address.

—Definition of common elements is understood. Limited common elements need specific definition. Our proposal is that balconies, terraces, decks, and windows are considered limited common elements and the responsibility of the individual unit owners, with the exception of the front bay windows. At this time we think these windows should be considered common and the responsibilities of the Assoc. This decision is not final but regardless we have decided that your front bay will be replaced at the expense of the Assoc.
—The Assoc. will be responsible for the repair and replacement of any limited common elements that present a major "structural or safety" issue i.e.: the structural failure of a balcony or terrace.
—We obtained an outside structural engineering report for the building. The opinion in the report is the building, for the most part, is in good shape. There are some minor issues with the back stairs, some tuck pointing, flashing repairs over some entrances and repairs to the around the structural support under Travis's balcony. All minor and all will be addressed at the time we do the renovations.
—We hope to finalize bids this week or next and have something tangible to present to all the owners. Ballpark for all the work appears to be around $400K.
—Mark has threatened to file a law suit and has been denied again. This matter has been turned over to our Insurance carrier to handle.

I think I have covered everything we discussed but if I missed something let me know.

Again, none of this is final but conceptually we are close. I know you, as we all do, have our own preferences and ideas but thanks for your support in whatever we end up doing.

 bl_39-Schiller_side2_1-8scale.pdf

 bl_39-Schiller_front1.pdf

 bl_39-Schiller_front2_1-8scale.pdf



X-Originating-IP: [68.142.229.104]
DomainKey-Signature: a=rsa-sha1; q=dns; c=nofws;
  s=s1024; d=sbcglobal.net;
  h=Received:X-YMail-OSG:From:To:Cc:Subject:Date:Message-ID:MIME-Version:Content-Type:X-Mailer:X-MimeOLE:Thread-Index;

b=3kDJ3QOUgMKFBDkS/n6x2HXiuH7pfBSgdf5n5zoHSfsByb8Ju9d9zne47dpxesh2OObt8QQPC+5N63Vkf+vnWqEeSQ/QXjnle/GdoS5Xui6qmN53EupknZxC5L2I6PYu1jkFlks4/FEikcLjzJWE
X-YMail-OSG: uXHTDokVM1m4AOQGTD1azq1BL9i3AOjoam7hFQPgGas7A6YV3BRlo26aONflpJcMoDgwjfpN.ysPCMkqUKjpmiQdj45FNI7kaY8zrBMI_buyolZfCKp4Ig~
From: "Bill Loder" <wm.loder@sbcglobal.net>
  "Lachman &Geeta Kristamurthi" <lkmurthi@aol.com>,
  'Mark & Linda Karno" <mlkarno@sbcglobal.net>,
  "Paula Jill Krasny" <paulakrasny@yahoo.com>,
  "Perry & Peggy Goldberg" <mrichek@ameritech.net>,
  <rpmohen@hotmail.com>, "Travis Cochran" <tcochranfx@yahoo.com>
Cc: "Bryan Cagan" <bryan@cagan.com>,
  "Gabriella R. Comstock'" <grc@kkmcondolaw.com>
Subject: Holiday Decorations
Date: Sun, 3 Dec 2006 12:34:04 -0600
X-Mailer: Microsoft Office Outlook 11
Thread-Index: AccXCZvuQY33YBcaQvqj3+FoRZTcFA==

The BOD has been approached by a number of owners, requesting we do Holiday decorations. The BOD has agreed and Dan Mohen and I hung a Holiday wreath, the same one I put up last year. We will also hang some light similar as last year.

If anyone would like to contribute or place Holiday decorations or would like to organize a decorating committee please let us know.

Please let us know if you have any questions.



X-Originating-IP: [68.142.229.101]
DomainKey-Signature: a=rsa-sha1; q=dns; c=nofws;
  s=s1024; d=sbcglobal.net;
  h=Received:From:To:Subject:Date:Message-ID:MIME-Version:Content-Type:X-Mailer:Thread-Index:X-MimeOLE;

b=yQ3lzvcDVMvlc2uuLkFVoJGRKI2R5LAGtqzcZE1z3zrHxmDVdM99YStzu+8FOu4jv2qLxm2MgMGh66U6N0Gg·
From: "Bill Loder" <wm.loder@sbcglobal.net>
To: "Bill Loder" <wm.loder@sbcglobal.net>, <drewholdings@hotmail.com>,
    "Lachman &Geeta Kristamurthi" <lkmurthi@aol.com>,
    "Mark & Linda Karno" <mlkarno@sbcglobal.net>,
    "Paula Jill Krasny" <paulakrasny@yahoo.com>,
    "Perry & Peggy Goldberg" <mrichek@ameritech.net>,
    <rpmohen@hotmail.com>, "Travis Cochran" <tcochranfx@yahoo.com>
Subject: Parking
Date: Fri, 8 Sep 2006 16:16:49 -0500
X-Mailer: Microsoft Office Outlook 11
Thread-Index: AcbTjBjrQ/XSNknqRNG9elxG/VDu9g==



At the last BOD and Unit owners meeting a motion was presented and past to evaluate the rules that were created at the 01/04 BOD meeting and determine what if they were needed. Some of those rules were incorporated into the By-Laws and will remain as prudent and good business decisions.   It was the opinion of this Board that many of the rules were not necessary, that we would evaluate each of them as soon as we deal with the building renovation.

One rule, though, agreed upon by all present deals with our parking spot on the west side of the building. All agreed there would be no limitations to that spot. It is on a first come first serve basis for OWNERS ONLY. No employees, service vehicles or guests.

Peggy you apparently misunderstood the change in the rule. This parking place is not open to your house keeper. The more important issue no one can park there with the gate open as this presents a MAJOR security violation and hazard.

Peggy knowing how sensitive you are to security issues I know you completely agree.

Thanks to all for your co-operation.

Bill Loder
Head of Trouble Shooting



## Ted Donner

**From:** Travis Cochran [tcochranfx@yahoo.com]
**Sent:** Monday, June 18, 2007 11:18 AM
**To:** mrichek@ameritech.net
**Cc:** drewholdings@hotmail.com; lkmurthi@aol.com; mlkarno@sbcglobal.net; mrichek@ameritech.net; rpmohen@hotmail.com; tcochranfx@yahoo.com; perrygoldberg@aol.com; tdonner@donnerco.com; bryan@cagan.com; wm.loder@sbcglobal.net
**Subject:** Electrical Saw

Peggy,

I understand your concern about the electric saw and tools being in the hallway.  Thank you for sharing this with all the unit owners but it's very important we submit these requests or complaints directly with Bryan Cagan.  Once this has been submitted, the board can address each issue and it's properly documented for all unit owners to obtain minutes on the boards decision.

Please ignore if you've already made the proper inquiry to Cagan.

Thanks for your understanding,

Travis Cochran

Yahoo! oneSearch: Finally, <u>mobile search that gives answers</u>, not web links.



## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT-CHANCERY DIVISION

MARGARET GOLDBERG,                )
                                  )
            Plaintiff,            )
                                  )
    v.                            )    No. 2006 CH 24682
                                  )
ASTOR PLAZA CONDOMINIUM           )
ASSOC., et al,                    )
                                  )
            Defendant.            )

### NOTICE OF MOTION

To:    Ms. Gabriella Comstock
       Knuckles, Keough and Moody
       101 E. Chicago Avenue
       Suite 103
       Naperville, IL 60450

**PLEASE TAKE NOTICE THAT** on July 24, 2007 at 3:30 p.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before the Honorable James F. Henry of the Circuit Court of Cook County, Richard J. Daley Center, Chicago, Illinois and then and there present the attached **GOLDBERG'S MOTION FOR MANDATORY INJUNCTIVE RELIEF**, a copy of which is hereby served upon you. The undersigned further certifies that under Section 1-109 that he served a copy of this notice and referenced pleading on the above referenced counsel of record by email and facsimile this 24th day of July, 2007 at 3:00 pm.

                              Respectfully Submitted,

                              MARGARET GOLDBERG

                              By: _____
                                  One of her Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES, LLC
1131 Wheaton Oaks Court
Wheaton, Illinois 60187
630-588-1131
Attorney Code: 39148



IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT-CHANCERY DIVISION

| | | |
|---|---|---|
| MARGARET GOLDBERG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2006 CH 24682 |
| | ) | |
| ASTOR PLAZA CONDOMINIUM | ) | |
| ASSOCIATION, *et al.*, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR INJUNCTIVE RELIEF WITH REGARD TO PENDING MEETING

MARGARET GOLDBERG ("Goldberg"), by her undersigned attorneys and pursuant to

805 ILCS 105/112.60, et seq., respectfully moves this Court for the entry of an order enjoining

the Defendant ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor") from proceeding

with a meeting scheduled for this evening, July 24, 2007 at 7:00pm without providing for the

meeting to be recorded pursuant to 805 ILCS 105/108.21.  In support thereof, Goldberg hereby

states:

### I. INTRODUCTION

Goldberg was advised, just this afternoon, that Astor Plaza's Board intends to proceed

with a meeting this evening – to ratify minutes from meetings at which she was represented by

her counsel over the course of the last year and a half – without either allowing her counsel to be

present or providing for the meeting to be recorded.

805 ILCS 105/108.21 provides that:.

**Meetings of the board of directors of a not-for-profit homeowners association or
residential cooperative not-for-profit corporation shall be open to any member,**
except for the portion of any meeting held (i) to discuss litigation when an action against

1

or on behalf of the corporation has been filed and is pending in a court or administrative tribunal, or when the board of directors finds that such an action is probable or imminent, (ii) to consider information regarding appointment, employment or dismissal of an employee, or (iii) to discuss violations of rules and regulations of the corporation. **Any member may record by tape, film or other means the proceedings at such meetings or portions thereof required to be open by this Section. The board may prescribe reasonable rules and regulations to govern the right to make such recordings.** \*\*\*

Correspondence memorializing the discussions among counsel with regard to the issue is attached hereto and the undersigned hereby verifies that the same is true and correct to the best of his knowledge and belief, based on personal knowledge and familiarity with the relevant correspondence and other books and records relating thereto. The Board has thus far refused to allow for at least two meetings to be recorded, as verified in recordings made by Mark Karno (another unit owner) at the first meeting and their decision to cancel the last meeting rather than allow for it to be recorded. Goldberg cannot know with any degree of certainty why the Board is so determined to proceed in surreptitiously closed session – were it for any reason relating to this litigation, the Board would be entitled to do so and would have announced a closed session – but she cannot even seek to undue whatever harm comes from that meeting without being able to at least know what transpired through the statutorily protected mechanism of a recording.

## II. DISCUSSION

A plaintiff seeking the entry of preliminary injunctive relief must demonstrate that:

(1)    No adequate remedy at law exists and that it is likely to suffer irreparable harm if the injunction is not granted, and

2

(2)     Plaintiff has some likelihood of success on the merits.[1]

When a moving party fulfills these requirements, courts then consider

(3)     The balance of harms to the parties, and

(4)     Whether the issuance of an injunction is in the public interest.

The first two elements are threshold elements. Thus, once it is established that plaintiff has satisfied the initial threshold, the court's inquiry should involve a 'sliding scale' analysis in which the court considers not only plaintiff's claim but also the potential harm to the parties and the public from the grant or denial of the proposed injunction. *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993). *See also Horn Abbot, Ltd. v. Sarsaparill Ltd.*, 601 F. Supp. 360, 364-65 (N.D. Ill. 1984) (This traditional four-part standard applies to all requests for emergency injunction relief). Goldberg thus submits that her motion should be granted, in this case, because the threshold elements necessary to injunctive relief have been satisfied in this case and the equities favoring the granting of injunctive relief in this case far outweigh those favoring its denial.[2]  Goldberg has a protectible interest in knowing what transpires, through the veracity

---

[1]     *See Tierney v. Village of Schaumburg*, 182 Ill App. 3d 1055, 1059-60, 538 N.E.2d 904, 907 (1st Dist. 1989). *See also Mil-Mar Shoe Co., Inc. v. Shona Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996). *See also Storck U.S.A., L.P. v. Farley Candy Co.*, 785 F. Supp. 730, 732 (N.D. Ill 1992), *quoting Throton v. Barnes*, 890 F.2d 1380, 1384 (7th Cir. 1989) (some likelihood of success on the merits means that the moving party's chances are "better than negligible").

2 *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386-388 (7th Cir. 1984) ("[T]he task for the district judge... is to minimize errors: the errors of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose.  The judge must try to avoid the error that is more costly in the circumstances.  That cost is a function of the gravity of the error if it occurs and the probability that it will occur."); *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1435 (7th Cir. 1986) ("The court's primary goal in considering requests for preliminary injunctions is, "to achieve a just result which will maintain the status quo pending trial.").

of a recording, at a meeting of the Association Board. See also *McRand, Inc. v. Van Beelen*, 138 Ill. App. 3d 1045, 1054, 486 N.E.2d 1306 (1st Dist. 1985) ("Once a protectible interest is established, irreparable injury is presumed to follow if the interest is not protected....").

Moreover, in order to demonstrate a reasonable likelihood of success on the merits for the purposes of a temporary restraining order, Goldberg need only demonstrate that her chance of prevailing is "better than negligible." *Kinney v. International Union of Operating Engineers*, 944 F.2d 1271, 1275 (7th Cir. 1993).[3] The equities also favor the entry of injunctive relief as the Board can show no reason why it should be harmed by allowing this meeting to be recorded (having been denied access to minutes is, on the other hand, a gravamen to the complaint in this case). And no bond should be required under 735 ILCS 5/11-103 as there is no reason for the Board to fear irreparable harm from its action being recorded.[4]

## II. CONCLUSION

WHEREFORE, MARGARET GOLDBERG ("Goldberg"), by her undersigned attorneys and pursuant to 805 ILCS 105/112.60, et seq., respectfully moves this Court for the entry of an order enjoining the Defendant ASTOR PLAZA CONDOMINIUM ASSOCIATION ("Astor") from proceeding with a meeting scheduled for this evening, July 24, 2007 at 7:00pm without providing for the meeting to be recorded pursuant to 805 ILCS 105/108.21, together with such

---

[3] *See also Houseknecht v. Zagel*, 112 Ill. App. 3d 284, 292, 445 N.E.2d 402 (1st Dist. 1983) (Movant was required only to establish that they would "probably be entitled to the relief requested if the proof sustained their allegations."); *National People's Action v. Village of Wilmette*, 914 F.2d 1008, 1010 (7th Cir. 1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1311, 113 L.Ed.2d 245 (1991); *Storck U.S.A., L.P. v. Farley Candy Co.*, 785 F. Supp. 730, 732 (N.D. Ill 1992).

[4] *See, e.g. General Electric Co. v. United Auto. Workers*, 8 Ill. App. 2d 154, 167, 130 N.E.2d 758 (3d Dist. 1955) (No bond need be required in a case in which the defendant is not restrained from exercising its legal rights).

4

additional relief as the Court deems just and proper or to which Goldberg is otherwise entitled as a matter of law.

Respectfully submitted,

MARGARET GOLDBERG

By: _____

One of Her Attorneys

Ted A. Donner
DONNER & COMPANY LAW OFFICES LLC
1131 Wheaton Oaks Court
Wheaton, Illinois 60187
630-588-1131
Attorney Code: 39148