**e. Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

   (a) Whether the insured may be liable as an employer or in any other capacity; and

   (b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

     (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

     (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (d)(i) does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

Copyright, Insurance Services Office, Inc., 1997          **BP 00 06 01 97**    □

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the following equipment:

    **(a)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(b)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Professional Services**

"Bodily injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

**(1)** Legal, accounting or advertising services;

**(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(3)** Supervisory, inspection or engineering services;

**(4)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(5)** Any health or therapeutic service treatment, advice or instruction;

**(6)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(7)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

09/12/2007 10:56 IFAX                                        → Karin                    ☑084/096

(8) Body piercing services; and

(9) Services in the practice of pharmacy; but this exclusion does not apply to an insured whose operations include those of a retail druggist or drugstore.

**k. Damage To Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products – completed operations hazard".

**l. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products – completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**n. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**o. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**p. Personal Or Advertising Injury**

"Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

Copyright, Insurance Services Office, Inc., 1997

BP 00 06 01 97      ☐

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(6) With respect to any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

q. **Advertising Injury**

"Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

Exclusions c., d., e., f., g., h., i., k., l., m., n. and o. do not apply to damage by fire or explosion to premises while rented to you, or temporarily occupied by you with permission of the owner. A separate Limit of Insurance applies to this coverage as described in Section D., Limits of Insurance.

2. **Applicable To Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products – completed operations hazard".

g. Excluded under Business Liability Coverage.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

3. **Applicable To Both Business Liability Coverage And Medical Expenses Coverage – Nuclear Energy Liability Exclusion**

This insurance does not apply:

a. Under Business Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

08/12/2007 10:56 IFAX                                    → Karin                    ☒ 086/096

(2) Resulting from the "hazardous proper-
ties" of "nuclear material" and with re-
spect to which:

  (a) Any person or organization is re-
quired to maintain financial protec-
tion pursuant to the Atomic Energy
Act of 1954, or any law amendatory
thereof; or

  (b) The insured is, or had this policy not
been issued would be, entitled to in-
demnity from the United States of
America, or any agency thereof, un-
der any agreement entered into by
the United States of America, or any
agency thereof, with any person or
organization.

b. Under Medical Expenses Coverage, to
expenses incurred with respect to "bodily
injury" resulting from the "hazardous prop-
erties" of "nuclear material" and arising out
of the operation of a "nuclear facility" by
any person or organization.

c. Under Business Liability Coverage, to
"bodily injury" or "property damage" result-
ing from the "hazardous properties" of the
"nuclear material"; if:

(1) The "nuclear material":

  (a) Is at any "nuclear facility" owned by,
or operated by or on behalf of, an in-
sured; or

  (b) Has been discharged or dispersed
therefrom; or

(2) The "nuclear material" is contained in
"spent fuel" or "waste" at any time pos-
sessed, handled, used, processed,
stored, transported or disposed of by or
on behalf of an insured; or

(3) The "bodily injury" or "property damage"
arises out of the furnishing by an in-
sured of services, materials, parts or
equipment in connection with the plan-
ning, construction, maintenance, opera-
tion or use of any "nuclear facility"; but if
such facility is located within the United
States of America, its territories or pos-
sessions or Canada, this Exclusion (3)
applies only to "property damage" to
such "nuclear facility" and any property
thereat.

As used in this exclusion:

"By-product material" has the meaning given it
in the Atomic Energy Act of 1954 or in any law
amendatory thereof;

"Hazardous properties" include radioactive,
toxic or explosive properties;

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used
for:

  (1) Separating the isotopes of uranium or
plutonium;

  (2) Processing or utilizing "spent fuel"; or

  (3) Handling, processing or packaging
"waste";

(c) Any equipment or device used for the
processing, fabricating or alloying of
"special nuclear material" if at any time the
total amount of such material in the custody
of the insured at the premises where such
equipment or device is located consists of
or contains more than 25 grams of pluto-
nium or uranium 233 or any combination
thereof, or more than 250 grams of ura-
nium 235;

(d) Any structure, basin, excavation, premises
or place prepared or used for the storage or
disposal of "waste";

and includes the site on which any of the fore-
going is located, all operations conducted on
such site and all premises used for such op-
erations;

"Nuclear material" means "source material",
"special nuclear material" or "by-product mate-
rial";

"Nuclear reactor" means any apparatus de-
signed or used to sustain nuclear fission in a
self-supporting chain reaction or to contain a
critical mass of fissionable material;

"Property damage" includes all forms of radio-
active contamination of property.

"Source material" has the meaning given it In
the Atomic Energy Act of 1954 or in any law
amendatory thereof;

"Special nuclear material" has the meaning
given it in the Atomic Energy Act of 1954 or in
any law amendatory thereof;

"Spent fuel" means any fuel element or fuel
component, solid or liquid, which has been
used or exposed to radiation in a "nuclear re-
actor";

    Copyright, Insurance Services Office, Inc., 1997    BP 00 06 01 97    ☐

"Waste" means any waste material:

**(a)** Containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

**(b)** Resulting from the operation by any person or organization of any "nuclear facility" included under Paragraphs **(a)** and **(b)** of the definition of "nuclear facility".

## C. Who Is An Insured

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**2.** Each of the following is also an insured:

**a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

**(1)** "Bodily injury" or "personal injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages of the injury described in Paragraphs **(1)(a)** or **(1)(b)**; or

**(d)** Arising out of his or her providing or failing to provide professional health care services. However, if you have "employees" who are pharmacists in your retail druggist or drugstore operation, they are insured with respect to their providing or failing to provide professional health care services; or

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

09/12/2007 10:56 IFAX                                    → Karin                  ☑ 088/096

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

D. **Liability And Medical Expenses Limits Of Insurance**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The most we will pay for the sum of all damages because of all:

a. "Bodily injury", "property damage" and medical expenses arising out of any one "occurrence"; and

b. "Personal injury" and "advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations. But the most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses limit shown in the Declarations.

3. The most we will pay under Business Liability Coverage for damages because of "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire or explosion is the Fire Legal Liability limit shown in the Declarations.

4. **Aggregate Limits**

The most we will pay for:

a. Injury or damage under the "products — completed operations hazard" arising from all "occurrences" during the policy period is the Liability and Medical Expenses limit; and

b. All other injury or damage, including medical expenses, arising from all "occurrences" during the policy period is twice the Liability and Medical Expenses limit. This limitation does not apply to "property damage" to premises while rented to you or temporarily occupied by you with permission of the owner, arising out of fire or explosion.

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

E. **Liability And Medical Expenses General Conditions**

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

          Copyright, Insurance Services Office, Inc., 1997          BP 00 06 01 97     □

09/12/2007 10:57 IFAX                                    → Karin                    ☑089/096

**b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

    **(2)** Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation, or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Financial Responsibility Laws**

**a.** When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

**b.** With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

**4. Legal Action Against Us**

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**F. Liability And Medical Expenses Definitions**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

**a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**b.** Oral or written publication of material that violates a person's right of privacy;

**c.** Misappropriation of advertising ideas or style of doing business; or

**d.** Infringement of copyright, title or slogan.

09/12/2007 10:57 IFAX                                    → Karin                    ☑ 090/096

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of "your product" or "your work"; or

   (2) Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

     Copyright, Insurance Services Office, Inc., 1997     BP 00 06 01 97     ☐

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   **b.** While it is in or on an aircraft, watercraft or "auto"; or

   **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   **b.** Vehicles maintained for use solely on or next to premises you own or rent;

   **c.** Vehicles that travel on crawler treads;

   **d.** Vehicles, whether self-propelled or not, on which are permanently mounted:

      **(1)** Power cranes, shovels, loaders, diggers or drills; or

      **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

   **e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      **(2)** Cherry pickers and similar devices used to raise or lower workers;

   **f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      **(1)** Equipment designed primarily for:

         **(a)** Snow removal;

         **(b)** Road maintenance, but not construction or resurfacing; or

         **(c)** Street cleaning;

      **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

   **a.** False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products – completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

           Copyright, Insurance Services Office, Inc., 1997           BP 00 06 01 97      ☐

09/12/2007 10:57 IFAX                                              → Karin                    ☑093/096

19. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

09/12/2007 10:57 IFAX                                    ↑ Karin              ☑ 094/098

BUSINESSOWNERS
BP 04 96 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## PREMIUM AUDIT ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

A.    Paragraph **2.** of the **Premium Audit** Common Policy Condition is replaced by the following:

2.    Premium shown in this policy as advance premium is a deposit premium only.  At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill.  If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

Copyright, ISO Properties, Inc., 2001                    BP 04 96 10 01

IL 02 84 10 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs 9. and 10. below, we may cancel this policy by mailing written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs 9. and 10. below, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. You have violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker, at the last addresses known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. Proof of mailing will be sufficient proof of notice.

8. Our notice of cancellation will state the reason for cancellation.

9. **Real Property Other Than Residential Properties Occupied By 4 Families Or Less:**

   The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

IL 02 84 10 00                    Copyright, Insurance Services Office, Inc., 1999                    Page 1 of 2    ☐

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation at least 10 days before the effective date of cancellation.

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

(1) Seasonal unoccupancy; or

(2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

**c.** The building has:

(1) An outstanding order to vacate;

(2) An outstanding demolition order; or

(3) Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

**10. Residential Properties Occupied By 4 Families Or Less:**

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

**11.** For insurance provided under the Commercial Property Coverage Part, the following applies:

**GRAIN IN PUBLIC GRAIN WAREHOUSES**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added:

**NONRENEWAL**

**1.** If we decide not to renew this policy, we will mail written notice stating the reason for nonrenewal to your last mailing address known to us at least 60 days before the expiration date of the policy. A copy of the notice will also be sent to:

**a.** The broker, if known to us, or the agent of record; and

**b.** The last known mortgagee or lienholder named in the policy at the last mailing address known to us.

This paragraph does not apply if we have manifested our willingness to renew directly to you.

**2.** The following provision applies only if this policy covers residential properties occupied by 4 families or less:

If this policy has been issued to you and in effect with us for 5 or more years, we may not fail to renew this policy unless:

**a.** The policy was obtained by misrepresentation or fraud;

**b.** The risk originally accepted has measurably increased; or

**c.** You received 60 days' notice of our intent not to renew as provided in **1.** above.

    Copyright, Insurance Services Office, Inc., 1999    IL 02 84 10 00    □

 **ST PAUL TRAVELERS**

| | |
|---|---|
| | **NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY** |
| | **INSURANCE POLICY** |

**DECLARATIONS**                                    **POLICY NO. 104668076**



Travelers Casualty and Surety Company of America
Hartford, CT 06183

(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

**NOTICE:  THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE "INSUREDS" DURING THE "POLICY PERIOD" AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN.  THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED AS "DEFENSE COSTS."  ANY "DEFENSE COSTS" THAT ARE INCURRED SHALL BE APPLIED AGAINST THE APPLICABLE RETENTION.  THE INSURER SHALL HAVE THE RIGHT AND DUTY TO DEFEND ANY CLAIM AGAINST THE INSUREDS UNDER THIS POLICY.**

**ITEM 1.**      **INSURED ORGANIZATION'S NAME and PRINCIPAL ADDRESS:**

ASTOR PLAZA CONDOMINIUM ASSOCIATION
c/o KASS MANAGEMENT
2000 N. RACINE, SUITE 3400
CHICAGO, IL 60614

**ITEM 2.**      **POLICY PERIOD:**

(a) From December 27, 2005    (b) To December 27, 2008   at 12:01 a.m.
Local Time both dates at the Principal Address stated in ITEM 1

**ITEM 3.**      **LIMIT OF LIABILITY (Inclusive of Defense Costs):**

$1,000,000.00 maximum aggregate Limit of Liability for all Claims first made in the Policy Period.

**ITEM 4.**      **RETENTION:**

(a) No Retention shall apply to Non-Indemnified Loss

(b)          $1,000.00 all Indemnified Loss.

**ITEM 5.**      **PREMIUM:**

$2,547.00  prepaid premium for the Policy Period.



**ITEM 6.**      **PREMIUM FOR DISCOVERY PERIOD:**  $606.75

**ITEM 7.**      **LENGTH OF DISCOVERY PERIOD:**          365  days.

**ITEM 8.**      **NOTICE REQUIRED TO BE GIVEN TO THE INSURER SHALL BE ADDRESSED TO:**

The Travelers Property Casualty
Bond Claim
One Tower Square, 3PB
Hartford, CT 06183

**ITEM 9.**      **PENDING AND PRIOR LITIGATION DATE:** December 27, 2005

**EXHIBIT**

**E**

**ITEM 10.    ENDORSEMENTS ATTACHED AT ISSUANCE:**

ILT-1018 09-04, 72121 08-98, 70002 08-98, 70003IL 09-99, 70004IL 04-00, 70007 02-02, 70010 08-98, 70064 04-00, 72023 01-03, 72047 08-96

These Declarations, the completed signed Application and their attachments and any materials submitted therewith, and Policy form 72001 (06/98) with Endorsements shall constitute the contract among the Insurer and the Insureds ("Policy").

_____

Countersigned By (if required)

CIRI 72000 (06/98)

 **ST PAUL TRAVELERS**

**NON-PROFIT MANAGEMENT AND ORGANIZATION LIABILITY INSURANCE POLICY**

Travelers Casualty and Surety Company of America
Hartford, CT 06183
(Herein, the "Insurer")

**THIS IS A CLAIMS MADE AND REPORTED POLICY WITH DEFENSE COSTS INCLUDED IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium and in reliance on all statements made and information furnished to the Insurer, including the statements made in the Application and its attachments and any materials submitted therewith, all of which are made a part hereof, the Insurer and the Insureds agree as follows:

## I. INSURING AGREEMENTS

### Liability Coverage

A.  The Insurer will pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth in Item 3 of the Declarations which is incurred by the Insureds as the result of any Claim first made against the Insureds and reported in writing to the Insurer during the Policy Period or the Discovery Period, if purchased, for a Wrongful Act.

### Defense Coverage

B.  The Insurer shall have the right and duty to defend any Claim covered by this Policy, even if any of the allegations are groundless, false or fraudulent. The Insurer's duty to defend shall cease upon exhaustion of the Limit of Liability set forth in Item 3 of the Declarations.

The Insureds agree to provide the Insurer with all information, assistance and cooperation which the Insurer reasonably requests and agree that in the event of a Claim the Insureds will do nothing that may prejudice the Insurer's position or its potential or actual rights of recovery.

The Insureds agree not to settle any Claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any Claim without the Insurer's written consent, which shall not be unreasonably withheld. The Insurer shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented.

The Insurer may, with the written consent of the Insureds, make any settlement of a Claim it deems expedient. If the Insureds withhold consent to such settlement, the Insurer's liability for all Loss on account of such Claim shall not exceed the amount for which the Insurer could have settled such Claim plus Defense Costs accrued as of the date such settlement was proposed in writing by the Insurer.

CIRI 72001 (06/98) Page 1 of 6

## II. DEFINITIONS

A.  Application means all signed, written applications including any attachments thereto and materials submitted therewith, for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer of which this Policy is a renewal or replacement, all of which shall be deemed attached hereto and incorporated herein.

B.  Claim means:

1)  a written demand for monetary damages;

2)  a civil proceeding commenced by the service of a complaint or similar pleading;

3)  a criminal proceeding commenced by a return of an indictment; or

4)  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against an Insured for a Wrongful Act, including an appeal therefrom.

C.  Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred in defending or investigating Claims, including appeals therefrom. Defense Costs does not include salaries, wages, overhead or benefit expenses of any Insured Person.

D.  Discovery Period means either (1) that period described in Section III(C)(1) of this Policy and Item 7 of the Declarations, or (2) that period in which coverage under this policy is extended pursuant to Section V(C) of this Policy.

E.  Financial Insolvency means the status of the Insured Organization as a result of the appointment of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the Insured Organization, or the Insured Organization becoming a debtor in possession.

F.  Indemnified Loss means (1) Loss which the Insured Organization becomes legally obligated to pay as the result of Claims made against the Insured Organization, and (2) Loss for which the Insured Organization grants indemnification to any Insured Person.

G. Insured(s) means the Insured Organization and the Insured Persons.

H. Insured Organization means the Parent Organization and its Subsidiaries.

I. Insured Persons means any persons who were, now are, or shall become: (1) duly elected or appointed directors, trustees or officers of any Insured Organization; or (2) employees, members of duly constituted committees or volunteers of any Insured Organization that is a non-profit entity.

J. Loss means the total amount excess of the applicable Retention which any Insured becomes legally obligated to pay as the result of all Claims first made against any Insured during the Policy Period for Wrongful Acts including, but not limited to, damages, judgments, settlements and Defense Costs. Loss does not include (1) punitive or exemplary damages, (2) the multiple portion of any multiple damage award, (3) criminal or civil fines or penalties imposed by law, (4) taxes, (5) any amount not indemnified by the Insured Organization for which the Insured is absolved from payment by reason of any covenant, agreement or court order, and (6) matters uninsurable under the law pursuant to which this Policy is construed.

K. Non-Indemnified Loss means all Loss other than Indemnified Loss.

L. Parent Organization means the organization designated in Item 1 of the Declarations.

M. Policy Inception Date means the date stated in Item 2(a) of the Declarations.

N. Policy Termination Date means the date stated in Item 2(b) of the Declarations or the date of any cancellation or non-renewal of this Policy, whichever is earlier.

O. Policy Period means the period between the Policy Inception Date and the Policy Termination Date.

P. Pollutants means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or a state, county, municipality or locality counterpart thereof. Such substances shall include, but not be limited to, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. Pollutants shall also mean any other air emissions, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, electric or magnetic or electromagnetic fields and any noise.

Q. Related Wrongful Acts means Wrongful Acts that arise out of, are based on, relate to or are in consequence of, the same facts, circumstances or situations.

R. Subsidiary means:

1) any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, had on or prior to the Policy Inception Date the ability to control or direct its managerial decisions or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws;

2) any non-profit entity with respect to which the Insured Organizations, directly or indirectly, in any combination, acquires by purchase, creation or otherwise during the Policy Period the ability to control or direct its managerial decisions, or to select a majority of its trustees or directors, whether through operation of law or by reason of membership, securities ownership, agreement, charter, certificate of incorporation, or by-laws.

If the annual revenues for the most recent fiscal year of any non-profit entity described in paragraph 2) above exceed 20% of the consolidated revenues for the most recent fiscal year of the Parent Organization and its Subsidiaries, the Parent Organization shall give written notice of such acquisition to the Insurer as soon as practicable, but in no event later than 90 (90) days after the effective date of such acquisition, together with such information as the Insurer may require. This policy shall not afford any coverage with respect to such non-profit entity and its Insured Persons following such ninety (90) day period unless (1) the Insurer in its sole discretion agrees by endorsement to this policy to afford such coverage, and (2) the Insureds pay an additional premium and accept any special policy terms and conditions required by the Insurer.

S. Wrongful Act means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed or attempted, or allegedly committed or attempted, by the Insured Organization or by one or more Insured Persons, individually or collectively, in their respective capacities as such, including but not limited to any Wrongful Employment Practices.

T. Wrongful Employment Practices means any actual or alleged: (1) wrongful dismissal, discharge or termination of employment; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) employment discrimination; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent employment evaluation; and/or (11)

failure to provide adequate workplace or employment policies and procedures.

## III. EXTENSIONS

A. **ESTATES, HEIRS, LEGAL REPRESENTATIVES, ETC.**

In the event of the death, incapacity or bankruptcy of any Insured Person, any claim against his or her estate, heirs, legal representatives or assigns based on actual or alleged **Wrongful Acts** of such **Insured Person** shall be deemed to be a **Claim** against such **Insured Person** for the purposes of this Policy.

B. **MARITAL ESTATE**

Subject otherwise to the terms hereof, this Policy shall cover Loss arising from any claim made against the lawful spouse (whether such status is derived by reason of statutory, common or other law of any applicable jurisdiction in the world) of an Insured Person

for claims arising solely out of his or her capacity as the spouse of an Insured Person, including such claims that seek damages recoverable from marital community property, property jointly held by the Insured Person and the spouse, or property transferred from the Insured Person to the spouse; provided, however, that this extension shall not afford coverage for any claim for any actual or alleged Wrongful Act of the spouse. All terms, conditions and other provisions of this Policy, inclusive of any provision relative to the applicable Retention, which would be applicable to Loss incurred by the Insured Person in such claim shall also apply to Loss incurred by the spouse in such claim.

## C. DISCOVERY PERIOD

1) If the Insurer or the Parent Organization cancels, fails, or refuses to renew this Policy for any reason other than the Insured's non-payment of premium or non-compliance with the terms and conditions of this Policy, then the Parent Organization shall have the right, on payment of the additional premium shown in Item 6 of the Declarations, to an extension of the coverage granted by this Policy for any Claim first made against any Insured during the period specified in Item 7 of the Declarations, but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the Policy Termination Date.

2) As a condition precedent to the right to purchase the Discovery Period, the total premium for this Policy must have been paid. The right to purchase the Discovery Period shall terminate unless written notice of the election of the Discovery Period is received by the Insurer by certified mail, prepaid express courier or facsimile within thirty (30) days after the Policy Termination Date, together with full payment of the premium for the Discovery Period. In the event that such notice and premium payment are not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

3) If the Discovery Period is purchased, the entire premium for the Discovery Period shall be deemed earned at its commencement.

4) The purchase of the Discovery Period shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

5) If the coverage extension described in Section V(C) of this Policy is purchased, the Insureds shall not be entitled to also purchase the coverage extension described in this Section III(C).

CIRI 72001 (06/98) Page 3 of 6

## IV. EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any of the Insureds:

1) for:

   (a) bodily injury, sickness, disease or death of any person, or any damage to or destruction of any tangible property including loss of use thereof; or

   (b) mental anguish or emotional distress, however this subpart (b) shall not apply with respect to any Claim for Wrongful Employment Practices;

2) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any fact, circumstance or situation which has been the subject of any notice given under any other policy of which this Policy is a renewal or replacement;

3) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving (a) the actual, alleged or threatened discharge, release, escape or disposal of Pollutants into or on real or personal property, water or the atmosphere; or (b) any direction or request that the Insured test for, monitor, clean up, remove, contain, treat, detoxify or neutralize Pollutants, or any voluntary decision to do so; including but not limited to any Claim for financial loss to the Insured Organization, its members or security holders or its creditors based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the matters described in (a) or (b) of this exclusion;

4) for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974 and amendments thereto or similar provisions of any federal, state or local statutory law or common law upon fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of the Insured Organization;

5) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any litigation against any Insured on or prior to the Pending and Prior Litigation Date set forth in Item 9 of the Declarations, or any fact, circumstance or situation underlying or alleged therein;

6) brought or maintained by or on behalf of the Insured Organization, except a Claim that is brought and maintained totally independently of, and totally without the solicitation, assistance, participation, or intervention of any officer, director or trustee of the Insured Organization;

7) for Wrongful Acts by any Insured Person as a director, officer or employee of any entity other than the Insured Organization, even if such service is directed or requested by the Insured Organization;

8) for any Wrongful Act committed or allegedly committed by any Insured Organization or its Insured Persons while such Insured Organization was not a Subsidiary; however, if before or during the Policy Period an organization ceases to be a Subsidiary, coverage with respect to such Subsidiary and its Insured Persons shall continue until termination of this Policy but only with respect to Claims for Wrongful Acts taking place while such organization was a Subsidiary;

9) for liability under or breach ...y oral, written or implied contract or agreement, or for liability of others assumed by the Insured under any such contract or agreement; however, this exclusion shall not apply to the extent (a) the Insured would have been liable in the absence of such contract or agreement; or (b) the Claim is a Claim for Wrongful Employment Practices;

10) brought about or contributed to by any deliberately fraudulent or dishonest act or omission or any purposeful violation of any statute or regulation by such Insured; however, this exclusion shall not apply unless a judgment or other final adjudication adverse to such Insured establishes such a deliberately fraudulent or dishonest act or omission or purposeful violation;

11) for such Insured gaining in fact any profit, remuneration or advantage to which such Insured was not legally entitled; or

12) based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the ownership, control, management or operations of any for-profit Subsidiary of the Insured Organization; however, this exclusion shall not apply with respect to any for-profit Subsidiary that is an Insured Organization pursuant to an endorsement to this Policy.

No fact pertaining to or knowledge or information possessed by any Insured Person shall be imputed to any other Insured Person for purposes of applying any Exclusion in Section IV. Only facts pertaining to or knowledge or information possessed by an officer, director or trustee of the Insured Organization shall be imputed to the Insured Organization for purposes of applying any Exclusion in Section IV.

## V. GENERAL CONDITIONS AND LIMITATIONS

### A.  LIMIT OF LIABILITY AND RETENTION

1) The Insurer shall pay Loss in excess of the applicable Retention set forth in Item 4 of the Declarations up to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations for the Policy Period set forth in Item 2 of the Declarations.

2) Losses b... d upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date. The applicable Retention shall apply only once to each such single Claim.

3) If the Insured Organization is permitted or required by common or statutory law to ultimately indemnify the Insured Persons for any Loss, or to advance Defense Costs on their behalf, and does not in fact do so other than for reasons of Financial Insolvency, then any payment of such Loss or any advancement of such Defense Costs by the Insurer shall not be subject to any Retention amount. In that event, the Insured Organization shall reimburse and hold harmless the Insurer for such Loss up to the Retention amount set forth in Item 4(b) of the Declarations. For purposes of this Section V(A), the resolutions of the Insured Organization shall be deemed to provide indemnification for Loss to the fullest extent permitted by common or statutory law.

4) If Loss resulting from a Claim is subject in part to no Retention and in part to the Retention for Indemnified Loss, the Retention set forth in Item 4(b) of the Declarations shall be applied only to that part of the Loss which is Indemnified Loss.

5) With respect to any Claim, other than a Claim for Wrongful Employment Practices, the applicable Retention shall apply only to Defense Costs, not to any settlement, judgment or other damage.

6) If a Claim, other than a Claim for Wrongful Employment Practices, is fully and finally resolved with prejudice with respect to all Insureds without any Insured becoming legally obligated to pay any judgment, settlement or damages (other than

Defense Costs) as the result of such Claim, no Retention shall apply with respect to such Defense Costs.

7) Defense Costs shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations, and Defense Costs shall reduce the maximum aggregate Limit of Liability.

8) The amount set forth in Item 3 of the Declarations shall be the maximum aggregate Limit of Liability of the Insurer under the Policy for the Policy Period for all Loss resulting from all Claims, regardless of the time of payment by the Insurer.

### B.  NOTICE

1) If during the Policy Period or Discovery Period, if purchased, any Claim is first made against any Insured, the Insureds as a condition precedent to their right to be reimbursed under this Policy, shall give to the Insurer written notice of any such Claim as soon as practicable but in no event later than thirty (30) days after the expiration date of the Policy or the Discovery Period (if applicable). The Insured shall give the Insurer such information and cooperation as it may reasonably require.

2) If during the Policy Period the Insureds shall become aware of any Wrongful Act which may subsequently give rise to a

Claim and shall give written ... e to the Insurer as soon as practicable during the Policy ... iod or Discovery Period (if applicable), then any Claim subsequently made against the Insureds arising out of such Wrongful Act shall be deemed to have been made during the Policy Period. Such notice must articulate the full particulars as to the nature of the potential Claim, the date of the Wrongful Act, the persons involved and the reasons for anticipating a Claim.

3). Notice to the Insurer hereunder shall be addressed as stated in Item 8 of the Declarations. Except as otherwise provided in this Policy, all notices under this Policy shall be in writing and given by mail, prepaid express courier or facsimile properly addressed and shall be effective upon receipt.

C. ACQUISITION OF PARENT ORGANIZATION

If during the Policy Period (1) the Parent Organization is acquired by merger into or consolidation with another organization, or (2) another organization, or person or group of organizations and/or persons acting in concert acquires the ability to control or direct the Parent Organization's managerial decisions or to select a majority of its trustees or directors, then coverage under this Policy shall continue until termination of the Policy Period, but only with respect to Claims for Wrongful Acts taking place prior to such merger, consolidation or acquisition. Upon the Insurer's receipt from the Insureds of notice of such merger, consolidation or acquisition, the Insurer shall promptly

provide to the Parent Organization alternative quotations for a three-year and six-year extension of coverage (or any lesser periods which the Insureds may request) with respect to Claims for such prior Wrongful Acts. Any coverage extension pursuant to such quotations shall be conditioned upon: (1) the Insureds giving to the Insurer written notice during the Policy Period of their desire to elect such extended coverage, (2) any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension, (3) payment during the Policy Period by the Insureds of any additional premium required by the Insurer, and (4) the Insureds accepting any additional terms and conditions required by the Insurer.

The purchase of any such coverage extension shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

The Parent Organization shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable together with such information as the Insurer may require.

D. SUBROG... ON

If any payment is made under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the Insured Persons' rights to indemnification or advancement from the Insured Organization. The Insureds shall execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

E. AUTHORIZATION AND NOTICES

By acceptance of this Policy, the Insureds agree that the Parent Organization will act on behalf of the Insureds with respect to:

1) the giving of all notices to the Insurer as provided herein,

2) the receiving of all notices from the Insurer,

3) the payment of premiums,

4) the receiving of any return premiums that may become due under this Policy,

5) the cancellation of this Policy, and

6) the negotiation, agreement to and acceptance of any endorsements or additional terms and conditions to this Policy.

F. CANCELLATION

1) This Policy may be cancelled by the Insurer only for non-payment of premium when due provided the Insurer gives written notice to the Parent Organization stating when, not less than ten (10) days thereafter, such cancellation shall be effective.

2) By acceptance of this Policy, the Insureds grant the exclusive power and authority to cancel this Policy on their behalf to the Parent Organization, which may cancel this Policy by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice, and the effective date of cancellation stated in the notice shall become the Policy Termination Date.

3) If this Policy is cancelled pursuant to Section V(F)(2), the earned premium shall be computed in accordance with the customary short rate table and procedure. If this Policy is cancelled pursuant to Section V(F)(1), the earned premium shall be computed *pro rata*. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

G. NON-RENEWAL

The Insurer may elect to non-renew this Policy only if it gives written notice of such non-renewal to the Parent Organization at least forty-five (45) days prior to the Policy Termination Date.

H ACTION AGAINST INSURER

No action shall lie against the Insurer unless, as a condition precedent thereto, there shall have been full compliance by the Insureds with all of the terms of this Policy; nor shall any such action lie until the amount of the Insured's obligation to pay shall

have been finally determined by judgment against an Insured after actual trial or by written agreement of the Insured, the claimant and the Insurer. No person or organization shall have any right under this Policy to join the Insurer as a party to any action against the Insureds to determine the Insurer's liability, nor shall the Insurer be impleaded by the Insureds or their legal representatives.

I.    ACCEPTANCE

By acceptance of this Policy, the Insureds agree that this Policy constitutes the entire agreement existing between them and the Insurer relating to this insurance.

J.    ALTERATION & ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy by an authorized employee or representative of the Insurer.

K.    OTHER INSURANCE

If any Loss otherwise covered under this Policy is insured under any other valid and collectible policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other insurance, whether such other insurance is stated to be primary, contributory excess, contingent or otherwise unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy Number of this Policy.

WARRANTIES AND COVENANTS

The Insureds warrant and agree as a condition to the Insurer's obligations hereunder, as follows:

1) The statements and representations made in the Application are the Insureds' statements and representations and are true. This Policy is issued in reliance upon the truth of such statements and representations.

2) In the event that any statement or representation in the Application is untrue, this Policy shall be void and of no effect whatsoever, but only with respect to:

(a) any Insured Person who had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed, and

(b) the Insured Organization if the person who signs the Application had knowledge or information as of the Policy Inception Date of the facts that were not truthfully disclosed.

Whether an Insured Person had such knowledge or information shall be determined without regard to whether the Insured Person actually knew the Application contained such untrue statement or representation.

IN WITNESS WHEREOF, the Company has caused this Policy to be signed by its authorized Company officers at Hartford, CT.

Executive Vice President

Corporate Secretary

CIRI 72001 (06/98)  Page 6 of 6

 **ST PAUL TRAVELERS**

## IMPORTANT NOTICE REGARDING INDEPENDENT AGENT AND BROKER COMPENSATION

For information about how St. Paul Travelers compensates independent agents and brokers, please visit www.StPaulTravelers.com, or you may request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183; Fax (860) 954 - 5987

ILT-1037 (04-05)

ISSUED BY: Travelers Casualty and Surety Company of America        POLICY NO: 104668076

ISSUED TO: ASTOR PLAZA CONDOMINIUM ASSOCIATION

### Illinois Amendatory Endorsement

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

In consideration of the payment of premium, it is hereby understood and agreed that:

1.    The Insurer may non-renew this Policy by mailing to the Parent Organization advance written notice of non-renewal sixty (60) days prior to the Policy Termination Date at the Parent Organization's last known mailing address and to the agent of record.

2.    Section V(F)(1), Cancellation, is amended by adding the following:

> Notice of cancellation for non-payment of premium shall be sent to the Parent Organization's last known mailing address and to the agent of record.

3.    Section II(C), Defense Costs, is deleted and replaced with the following:

> Defense Costs means that part of Loss consisting of reasonable costs, charges and expenses (including but not limited to attorney fees) incurred solely in defending or investigating Claims, including appeals therefrom.  Defense Costs does not include salaries, wages, overhead or benefit expenses of any Insured or the Insurer.

4.    Section III(C), Discovery Period, is deleted and replaced with the following:

### C. DISCOVERY PERIOD

1)    If the Insurer or the Parent Organization cancels or fails or refuses to renew this Policy for any reason, or if the Insurer offers renewal to the Parent Organization under terms and conditions less favorable to the Parent Organization than offered under this Policy ("Conditional Renewal"), then the Parent Organization shall have the right, on payment of the additional premium shown in Item 6 of the Declarations, to an extension of the coverage granted by this Policy for any Claim first made during the period of twelve (12) months following the Policy Termination Date, but only with respect to any actual or alleged Wrongful Act committed or allegedly committed before the Policy Termination Date.

72121 (08/98)

2)    The right to purchase the Discovery Period shall terminate unless written notice of the election of the Discovery Period is received by the Insurer by certified mail, prepaid express courier or facsimile within thirty (30) days after the Policy Termination Date, together with full payment of the premium for the Discovery Period. In the event that such notice and premium payment are not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

3)    If the Discovery Period is purchased, the entire premium for the Discovery Period shall be deemed earned at its commencement.

4)    The purchase of the Discovery Period shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

5)    Section V.(C), is deleted and replaced with the following:

C.    **ACQUISITION OF PARENT ORGANIZATION**

If during the Policy Period (1) the Parent Organization is acquired by merger into or consolidation with another organization, or (2) another organization, or person or group of organizations and/or persons acting in concert acquires the ability to control or direct the Parent Organization's managerial decisions or to select a majority of its trustees or directors, then coverage under this Policy shall continue until termination of the Policy Period, but only with respect to Claims for Wrongful Acts taking place prior to such merger consolidation or acquisition. Upon the Insurer's receipt from the Insureds of notice of such merger, consolidation or acquisition, the Insurer shall promptly provide to the Parent Organization alternative quotations for a three-year and six-year extension of coverage (or any lesser periods which the Insureds may request) with respect to Claims for such prior Wrongful Acts. Any coverage extension pursuant to such quotations shall be conditioned upon: (1) the Insureds giving to the Insurer written notice during the Policy Period of their desire to elect such extended coverage, (2) any premium paid or to be paid under this Policy being deemed fully earned upon inception of such coverage extension, (3) payment during the Policy Period by the Insureds of any additional premium required by the Insurer.

The purchase of any such coverage extension shall not increase or reinstate the maximum aggregate Limit of Liability set forth in Item 3 of the Declarations.

The Parent Organization shall give written notice of such merger, consolidation or acquisition to the Insurer as soon as practicable together with such information as the Insurer may require.

6)     Section V.(K) is deleted and replaced with the following:

K.     **OTHER INSURANCE**

Such insurance as is provided under this Policy shall apply only as excess over any other valid and collectible insurance. If determined that this Policy and another insurance policy shall apply as primary, the company shall not be liable under this Policy for a greater proportion of such Loss and claims expenses than the applicable Limit of Liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such Loss.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above-mentioned Policy, except as expressly stated herein. This endorsement is part of such Policy and incorporated therein.

Authorized Representative

72121 (08/98)

Page 3 of 3

ISSUED BY: Travelers Casualty and Surety Company of America      POLICY NO: 104668076

ISSUED TO: ASTOR PLAZA CONDOMINIUM ASSOCIATION

## PREMIUM INSTALLMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:
**Non-Profit Management and Organization Liability Insurance Policy**

It is agreed that the premium for the **Policy Period** shown in Item 2. of the declarations is
     **$2,547.00** ,payable from inception of Policy in equal annual installments of **$849.00**

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of the above mentioned policy, except as expressly stated herein. This endorsement is part of such policy and incorporated therein.

This endorsement is effective at the inception date stated in Item 2 of the Declarations or effective at 12:01 A.M. on
     , if indicated herein. Complete the following only when this endorsement is not prepared with the policy or is to be effective on a date other than the inception of the policy.

_____

Authorized Representative

CIRI 70002 (08/98)