## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, <br><br> Plaintiffs, <br><br> v. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA and MERRIMACK MUTUAL FIRE INSURANCE COMPANY, <br><br> Defendant. | Case No.  07 CV 6593 <br><br> Judge Gottschall <br><br> Magistrate Judge Keys |

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND TO REMAND CASE TO STATE COURT

NOW COME the Plaintiffs, ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, by and through their attorneys, Anthony G. Barone and David M. Jenkins of Barone & Jenkins, P.C., and hereby respectfully request leave of this Court, pursuant to 28 U.S.C. §1447(e) to file their First Amended Complaint adding a necessary party and the entry of an order remanding the case to the Circuit Court of Cook County, Illinois. In support, Plaintiffs have attached a copy of the proposed amendment as Exhibit A, and state as follows:

### INTRODUCTION

The present case is an insurance coverage dispute brought by a condominium association and certain board members against two of their insurance companies. Plaintiffs seek coverage with respect to a lawsuit brought against them by Margaret Goldberg. Plaintiffs seek a declaration that the Defendant insurance companies have breached their duty to defend and duty

to indemnify relative to the underlying case brought by Goldberg. The case presents solely questions of state common law.

Defendant Travelers has filed a notice of removal, removing the case to this Court. Plaintiffs now seek leave to file a first amended complaint seeking to add Goldberg, the allegedly injured party and claimant in the underlying case, as a necessary party to the case without whom full relief cannot be obtained. For the reasons set forth below, leave shall be granted to add Goldberg, pursuant to 28 U.S.C. §1447(e), and the case should be remanded back to state court.

## BACKGROUND

On or about October 12, 2007, Plaintiffs in this matter filed a complaint for declaratory relief against Defendants in the Chancery Division of the Circuit Court of Cook County, Illinois under Case Number 07 CH 29201, a copy of which is attached hereto as Exhibit B. Plaintiffs, who are a condominium association and its board members, were insured by Defendants, two insurance companies. Plaintiffs filed the above declaratory relief action based on the Defendants' denial of insurance coverage and denial of defense of a lawsuit brought by Margaret Goldberg against Plaintiffs in the Circuit Court of Cook County, Illinois, under Case Number 06 CH 24682. The allegations in Goldberg's complaint include several allegations against Plaintiffs in the instant action for alleged violations of Illinois statutes relating to the operation of the condominium board, alleged failure to provide minutes and regulations, and alleged improper communication between board members, among other things.

On numerous occasions, Plaintiffs gave notice of the Goldberg litigation to both defendant carriers and each denied coverage and defense. Margaret Goldberg was not initially named as a defendant in the instant case. Before plaintiffs had the opportunity to amend the complaint to add Ms. Goldberg as a necessary party pursuant to Illinois law, however, defendants filed a Notice of Removal bringing the action before this Court.

2

## ARGUMENT

Plaintiffs should be permitted to amend their complaint to add a necessary party, and the case should be remanded. The removal statute is to be construed narrowly, and doubts concerning removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993). Under 28 U.S.C. §1447(e), this Court may allow a complaint to be amended to add a necessary party defeating diversity jurisdiction, so long as the joinder is not solely for the purpose of defeating diversity jurisdiction. *See Brown v. Alter Barge Line, Inc.,* 461 F.Supp.2d 781 (S.D. Ill. 2006). Section 1447(e) states, "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court." 28 U.S.C. §1447(e). Additionally, leave to amend a complaint is freely given under the Federal Rules of Civil Procedure when justice so requires. (Fed. R. Civ. P. 15(a)), and is within the sound discretion of the district court. *Campbell v. Ingersoll Milling Mach. Co.,* 893 F.2d 925, 927 (7th Cir. 1990).

The decision to permit a joinder of a necessary party is an equitable determination, and does not rely on whether the new party is indispensable. *See Perez v. Arcobaleno Past Machs., Inc.,* 261 F.Supp.2d 997, 1001 (N.D. Ill. 2003); *Vasilakos v. Corometrics Medical Systems, Inc.,* 1993 WL 390283 at *2 (N.D. Ill. 1993). The courts consider the following factors:  (1) the plaintiff's motivation in seeking to join the additional party--particularly whether it is sought solely to defeat diversity jurisdiction, (2) the timeliness of the request, (3) the prejudice to the parties, and (4) other equitable considerations, including the defendant's interest in a federal forum. *Perez,* 261 F.Supp. 2d at 1001. If the court grants Plaintiffs' motion to amend, the matter is automatically remanded to the circuit court, because diversity would be destroyed. *Fuentes v. Ecolab, Inc.,* 2007 WL 77294 at *1 (N.D. Ill. 2007) (*citing Stevens v. Brink's Home Security, Inc.,* 378 F.3d 944, 949 (9th Cir. 2004)).

3

All of the relevant factors establish that Plaintiffs are entitled to add Goldberg as a party defendant and obtain an order remanding this case. First, Plaintiffs seek to amend the complaint because Goldberg is a necessary party. It has long been held under Illinois law that in actions where an insurer or an insured seeks a declaratory judgment regarding coverage, the injured party in the underlying lawsuit is a necessary party because the action has the potential to eliminate a source of funds for the injured claimant. *See Flashner Medical Partnership v. Marketing Management, Inc.,* 189 Ill.App.3d 45, 54 (1st Dist. 1989); *see also MFA Mutual Ins. Co. v. Cheek,* 66 Ill.2d 492 (1977); *Society of Mount Carmel v. National Ben Franklin Ins. Co. of Illinois,* 268 Ill.App.3d 655 (1st Dist. 1998).

Where a case involves the determination of insurance coverage, brought by an insured, the injured party, or claimant, is a necessary party to the suit. *Georgia-Pacific Corp. v. Sentry Select Insurance Co.,* 2006 WL 1525678 (S.D. Ill. 2006). In *Georgia-Pacific,* the court held that when a declaratory judgment action is filed to determine indemnity, regardless of the party filing it, the underlying claimant is considered a necessary party. *Id.* at *6. Here, Goldberg is a necessary party. If Defendants in this matter prevail, Goldberg will lose a potential source of funds relative to her lawsuit, and she has a direct interest in that result. Also, if Goldberg is not a party to the instant case, and she prevails in her action, she can pursue another claim through garnishment directly against the Defendant insurance carriers here in a separate action, without being bound by the decision. Joinder will therefore avoid duplicative litigation.

The second factor relative to amendment and removal here also favors the granting of Plaintiff's motion. The motion to amend is brought early in the case. Plaintiffs filed the complaint on October 12, 2007. One defendant answered, and the other filed the notice of removal on November 21, 2007. The present motion to amend was brought promptly in the litigation.

4

Finally, Defendants will suffer no prejudice by a remand, especially where any interest it may hold in having this state law diversity suit decided in federal court is minimal at best. *See, e.g., Vasilakos,* 1993 WL 390283 at *2. The case is early in its infancy, and is governed by Illinois law relative to the interpretation of an insurance policy. Accordingly, Plaintiffs should be permitted to amend the complaint to add Goldberg as a necessary party, and then obtain an order remanding the case.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion to Amend the Complaint and Remand the matter to circuit court pursuant to 28 U.S.C. §1447(e), in the interests of judicial economy, and to avoid duplicity in litigation.

Respectfully submitted,

**ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER**

By: _____
One of Their Attorneys

Anthony G. Barone (Atty. No. 06196315)
David M. Jenkins (Atty. No. 6211230)
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrace, Illinois 60181
630/472-0037

IN THE CIRCUIT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2007 CH 29201 |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; MERRIMACK MUTUAL FIRE INSURANCE COMPANY; and MARGARET GOLDBERG, | ) ) ) ) ) ) | **EXHIBIT A** |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF**

NOW COME the Plaintiffs, ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, by and through their attorneys, Barone & Jenkins, P.C., and for their Complaint for Declaratory Relief, states as follows:

**NATURE OF THE ACTION**

1. Plaintiffs are insured by Defendants Travelers Casualty and Surety Company of America ("Travelers") and Merrimack Mutual Fire Insurance Company ("Merrimack") under various policies of insurance. Plaintiffs bring this action pursuant to section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), against the Defendants to obtain a declaration that the Defendants' insurance policies provided defense and indemnity coverage to Plaintiffs for the claims made against them in a lawsuit filed by Margaret Goldberg in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (the "*Goldberg* Litigation").

## JURISDICTION AND VENUE

2.      This court has jurisdiction pursuant to the Declaratory Judgment Act, 735 ILCS 5/2-701.  There is an actual controversy between the parties and a declaratory judgment is necessary to determine the parties' rights and obligations relative to the payment of defense and indemnity costs for a pending litigation matter.

3.      Venue is appropriate pursuant to 753 ILCS 5/2-103(e).

## THE PARTIES

4.      Plaintiff, Astor Plaza Condominium Association ("Astor Plaza"), is a Condominium Association organized under the laws of the State of Illinois, which serves as the association for the condominium located at 39 East Schiller in Chicago, Illinois.

5.      Plaintiff, Daniel G. Mohen ("Mohen"), is an Illinois resident living in Unit 2E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

6.      Plaintiff, Travis W. Cochran ("Cochran"), is an Illinois resident living in Unit 1W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

7.      Plaintiff, Geeta Krishnamurthi ("Krishnamurthi"), is an Illinois resident living in Unit 3W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

8.      Plaintiff, William S. Loder ("Loder"), is an Illinois resident living in Unit 4W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

9.      Plaintiffs Mohen, Cochran, Krishnamurthi, and Loder are current members of the Board for Astor Plaza.

10      On information and belief, defendant Travelers is an insurance company authorized to transact insurance business in Illinois.

11.      On information and belief, defendant Merrimack is an insurance company authorized to transact insurance business in Illinois.

12.    Margaret Goldberg ("Goldberg") is an Illinois resident living in Unit 4E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

13.    Goldberg is the plaintiff in an action more fully described below against the Astor Plaza Condominium Association. She is a necessary party to the declaratory judgment action and is joined as a party defendant in order to be bound by the judgment to be rendered in this case.

## FACTS COMMON TO ALL COUNTS

### The Goldberg Litigation

*A.    Goldberg's Original Complaint.*

14.    In November 14, 2006, Goldberg filed a lawsuit in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (A copy of the original *Goldberg* Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "A").

15.    In the original Complaint, Goldberg alleged certain actions and/or inactions of the Astor Plaza Condominium Association Board of Directors relative to her and certain common elements and limited common elements associated with her condominium unit. Count I was a claim for oppression of a minority shareholder pursuant to the Illinois Business Corporations Act, and Count II was for declaratory relief.

16.    The original Complaint included the following allegations, among others:

(a)    Goldberg has experienced oppression as a minority owner by certain actions and proposed actions of the Astor Plaza Board of Directors;

(b)    over the course of the last five or six years, Goldberg found it increasingly difficult to get responses to her concerns with regard to the building;

(c)    Goldberg was "compelled" to retain counsel because the Association disregarded her interests and was failing to complete work that was to have been done with regard to a number of common elements affecting her property; and

3

(d)     Astor Plaza disregarded Goldberg's concerns about the front window frame on her unit and the structural integrity of the window casings on the side of her unit, reneged on a commitment to repair Goldberg's exterior metal balcony, effectively set aside Goldberg's complaints about building security, and continued to enforce building rules and regulations only on a selective and discriminatory basis.

17.     Goldberg further complained about a renovation plan that began in September 2006 which was allegedly aimed primarily at improving the overall appearance of the front lobby and building façade.

18.     In Count I, Goldberg requested the court to grant the following relief:

(a)     the entry of an order requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

(b)     the entry of an order prohibiting Astor Plaza from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the by-laws;

(c)     the entry of an order appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same; and

(d)     the entry of an order granting Goldberg her costs of suit and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

19.     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete work as requested, and/or to pay for completion of said work.

**B.     Goldberg's First Amended Complaint.**

20.     Goldberg later filed a First Amended Complaint with more detailed factual allegations, and which contained the same two counts as those in the original complaint. (A copy of the First Amended Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "B").

4

21.     In the First Amended Complaint, Goldberg alleged, among other things, that the defendants (Plaintiffs herein) have acted in a manner that was oppressive with regard to Goldberg's interest in the building, in dereliction of the obligations imposed upon them by the governing documents, in bad faith and in an arbitrary, overbearing and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be borne by Goldberg.

22.     In Count I of the First Amended Complaint, Goldberg requested the court enter an order:

    (a)    requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

    (b)    declaring that any financing agreement which the unit members may have voted or may in the future vote to implement, pursuant to which the rights and interests of Astor Plaza would be in any way impaired or subject to a lien, is invalid and unenforceable under the governing documents and that, by virtue thereof, no such liens should be enforced as against any rights or property in which the Goldbergs (or other non-voting members) have an interest;

    (c)    prohibiting Astor Plaza's unit owners from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the governing documents;

    (d)    requiring that Astor Plaza maintain and make available minutes which accurately reflect what takes place at meetings, which should be scheduled pursuant to the governing documents, and which are properly ratified as minutes at appropriate meetings;

    (e)    requiring that Astor Plaza's Board enforce both the rules and regulations of the Association and the obligations imposed upon unit owners by the governing documents and that appropriate fines be levied against unit owners who have violated these rules, regulations and obligations;

    (f)    compel appropriate modifications to the governing documents so as to establish a dispute resolution procedure that would allow for individuals with minority interests, such as Goldberg, to pursue relief in such circumstances without the need for incurring costs and expenses such as those attendant to this lawsuit (i.e., a mediation or arbitration procedure);

(g)     appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same; and.

(h)     granting Goldberg her costs of suit, attorneys fees incurred and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

23.     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunction relief requested by Goldberg in the First Amended Complaint if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

24.     On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

25.     The attorney fees sought by Goldberg were sought as monetary relief by virtue of the Condominium Property Act and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

C.     *Goldberg's Second Amended Complaint.*

26.     On or about August 28, 2007, Goldberg filed a Second Amended Complaint containing eight counts. (A copy of the Second Amended Complaint is attached an incorporated by reference, as if fully set forth herein, as Exhibit "C").

27.     In Count I of the Second Amended Complaint, Goldberg sought relief under 765 ILCS 605/19, for the alleged failure of Astor Plaza to produce minutes of meetings, and she alleged she was "compelled" to retain an attorney to request that she be provided copies of meeting minutes from prior meetings.

28.     Goldberg further alleged in Count I that, "[u]ntil such time as Astor Plaza produces those minutes to Goldberg, Goldberg will continue to incur attorneys fees and costs for

6

which she requests recovery pursuant 765 ILCS 605/19," and she asked the court to compel Astor Plaza to produce the minutes for meetings held from 2004 to the present.

29.    Goldberg further asked the court to enter an order awarding Goldberg her attorney's fees and costs, "together with such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law."

30.    In Count II, Goldberg sought relief under 765 ILCS 605/19 for Astor Plaza's alleged failure to produce applicable rules and regulations, and she asked the court to enter an order compelling Astor Plaza to pay the attorney fees and costs that Goldberg had incurred in connection with the actions she had taken through her counsel to request current copies of rules and regulations from 2005 to 2007, "together with such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law."

31.    In Count III, Goldberg sought relief against Loder under 805 ILCS 105/103.20, which section provides in relevant part:

> All persons who assume to exercise corporate powers without authority to do so shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof.

32.    In Count III, Goldberg further alleged that Loder "used his ostensible authority with the Board" to make certain promises to Goldberg and to demand certain accommodations for himself and members of his household, and that she was consistently "harassed by the Loder household."

33.    Count III further alleged that Goldberg was denied access to common property, thereby incurring "damages." Moreover, Goldberg asked the court to award her damages, together with attorney fees and costs, in an amount in excess of $50,000, together with additional relief as the court deems just and proper.

34.    In Count IV, Goldberg sought relief under 805 ILCS 105/108.21 against Astor Plaza for its alleged failure to provide access to and recording of meetings. Goldberg asked the

court to enter a declaratory judgment declaring that she has a right to designate a representative to attend and record board meetings and further awarding her attorney fees and costs, "and such additional relief as the Court deems just and appropriate or to which she is otherwise entitled as a matter of law."

35.    In Count V, Goldberg sought relief under Section V of the Declaration against all defendants with respect to the financing obtained relative to the construction project undertaken by the Board. Goldberg alleged that the underlying defendants (Plaintiffs herein) should be required to assume the costs of discharging the lien placed on the property, including both the cost of the individual shares, any pre-payment penalties, attorney fees and costs, and any other costs and expenses arising from that lien.

36.    Among other things, Goldberg sought an accounting regarding all expenditures and work done with respect to the construction project, and sought judgment against the defendants (Plaintiffs herein) individually "in such amount as the trier of fact determines would be necessary to discharge any lien, mortgage or other encumbrance created by the project, together with any costs and expenses incurred in connection therewith," plus costs and attorneys fees and "such additional relief as the Court deems just and proper or to which Goldberg may otherwise be entitled as a matter of law."

37.    In Count VI, Goldberg sought declaratory judgment relief with regard to Astor Plaza's duties and obligations under 765 ILCS 605/18(b)(2). She claimed that the individual defendants had used their positions as members of the Board to establish policies and procedures that recognize the existence of "*de facto*" segregation of unit owners depending upon whether they are or are not members of the Board.

38.    In Count VI, Goldberg specifically requested that each defendant who is found to have violated applicable rules and regulations "should be required to pay such fines or violations

as may be provided for in the governing documents or rules and regulations, together with an amount sufficient to cover any damages resulting therefrom," plus costs and additional relief.

39.    In Count VII, Goldberg brought a claim against Astor Plaza for its alleged failure to maintain the common elements. Goldberg alleged that she has a balcony that is substantially rusted, a deteriorating window frame in the front bay window, and side window frames which are badly deteriorated in her apartment.

40.    Goldberg asked the court to declare that the work necessary to repair Goldberg's balcony, and east and north side window frames, is the responsibility of Astor Plaza and that Astor Plaza should therefore pay for and ensure that those elements are repaired and restored with all due haste. Goldberg also sought a judgment in an amount sufficient to cover any damages shown to have resulted from Astor Plaza's failure to provide such repair and restoration thereto, plus costs and other additional relief.

41.    In Count VIII, Goldberg sought relief under 805 ILCS 5/112.50, which provides that a court may dissolve a corporation if the corporation is acting in a manner that is oppressive to shareholders or the corporate assets are being misapplied or wasted. Goldberg alleged that the defendants acted in a manner that was oppressive with regard to Goldberg's interest in the building, in dereliction of the obligations imposed upon them by a governing document, in bad faith and in an arbitrary and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be wrongfully borne by Goldberg.

42.    Goldberg sought injunctive relief and the appointment of an interim receiver. Goldberg requested that the court enter a declaratory judgment and to require that the Board complete work with regard to the limited common elements adjoining the Goldberg unit, plus other declaratory relief.

43.    Goldberg's specific demand for "damages" in Count III and Count IV of the Second Amended Complaint constituted a claim for "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

44.    Goldberg's demand for judgment in Count V was a demand for monetary relief and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

45.    With respect to the declaratory relief requested in the Second Amended Complaint, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

46.    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

47.    The attorney fees sought by Goldberg in the Second Amended Complaint were sought as monetary relief by virtue of the Condominium Property Act and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

### The Tendering Of The Goldberg Litigation For Defense

48.    Plaintiffs gave Travelers and Merrimack notice of the Goldberg Litigation and on numerous occasions have requested that each provide a defense.

49.    Travelers has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

50.    Merrimack has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

51.    Plaintiffs have incurred cost and expense, and will continue to incur cost and expense, relative to the Goldberg Litigation.

**The Merrimack Policy**

52.    Merrimack issued Policy No. SBP220-6003, covering the Policy Period of December 27, 2004 through December 27, 2005. (A copy of the Merrimack Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "D").

53.    Astor Plaza is the named insured under the Merrimack Policy, and each of the other Plaintiffs are insureds under the Merrimack Policy.

54.    The Merrimack Policy contains a Directors and Officers Liability Endorsement with claims made coverage. This Endorsement contains the following coverage grant:

SECTION I – COVERAGES

A.    INSURING AGREEMENTS

    1.    We will pay those sums that the "Insured" becomes legally obligated to pay as damages, in excess of the "Insured's" retention, because of any civil claim first made against the "Insured" during the policy term, or during the Insured's Extended Discovery Period, arising out of any "Wrongful Act" committed during the policy term. No other obligation or liability to pay sums or perform acts or services is covered unless provided for under Supplementary Payments.

        a.    The most we will pay for damages is limited as described in Limits of Insurance above;

        b.    We may, at our discretion, investigate any "Wrongful Act" and settle any claim or "suit" that may result; and

        c.    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements to which this coverage applies.

    2.    This insurance applies to "Wrongful Acts" only if a claim for damages because of a "Wrongful Act" is first made against an "Insured" during the policy term or Insured's Extended Discovery Period.

        a.    A claim by a person or organization seeking damages will have been deemed to have been made when notice of such claim is received and recorded by the "Insured" or by us, whichever comes

11

first.

    b.    All claims for damages because of "Wrongful Acts" arising from the same "Wrongful Act" will be deemed to have been made at the time the first of those claims is made against an "Insured".

55.    The Merrimack Policy does not define the term "civil claim" or "claim."

56.    The Merrimack Policy does not define the term "damages."

57.    Section VI of the Merrimack Policy provides as follows:

SECTION VI – INSURED'S EXTENDED DISCOVERY PERIOD

    A.    In the event this coverage part is subject to any of the following changes:

        1.    reduced limits of insurance;

        2.    restricted coverage provisions;

        3.    increased self-insured retention;

        4.    non-renewal; or

        5.    cancellation.

then such insurance afforded prior to such change shall not apply to "Wrongful Acts" unless claim is made or a "suit" is brought within three years of the effective date of such change.

    B.    The Insured's Extended Discovery Period only applies to "Wrongful Acts" occurring during the Policy period and shall be excess over any other valid and collectible insurance.

58.    On December 27, 2005, the Merrimack Policy was either non-renewed or canceled.

## The Travelers Policy

59.    Travelers issued a Non-Profit Management and Organization Liability insurance policy, No. 10466807. This policy covers December 27, 2005 through December 27, 2008. (A copy of the Travelers Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "E").

12

60.    The Travelers Policy provides in pertinent part that Travelers will pay on behalf of the Insureds any "Loss" incurred by the Insureds as a result of any Claim first made against the Insured during the Policy Period for a Wrongful Act.

61.    By virtue of Endorsement No. CIRI 70004 IL (04-00), the Travelers Policy defines the term "Claim" to include "a written demand for monetary relief or non-monetary relief," as well as "a civil proceeding commenced by the service of a complaint or similar pleading."

## COUNT I: DECLARATORY JUDGMENT
### (Merrimack Policy)

62.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 as and for their Paragraph 62 of Count I, as if fully set forth herein.

63.    Plaintiffs are Insureds under the Merrimack Policy for purposes of the claims made against them in the *Goldberg* Litigation.

64.    The Merrimack Policy obligates Merrimack to pay the sums in damages because of any civil claim first made against Plaintiffs during the Policy term, <u>or during the Extended Discovery Period</u> arising out of any "Wrongful Act" committed during the Policy term.

65.    Travelers has taken the position that a claim was first made against Plaintiffs in October 2005, which contention is denied by Plaintiffs. As an alternative to its denial, however, to the extent a claim is deemed to have been made in October 2005, such a claim was made during the term of the Merrimack Policy.

66.    In the alternative still, a claim for damages was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

67.    The original Complaint constituted a claim for damages because, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested

and/or to pay for completion of said work.

68.     In the alternative still, a claim for damages was first made against Plaintiffs when Goldberg filed her First Amended Complaint.

69.     The First Amended Complaint constituted a claim for "damages" because:

(a)     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work;

(b)     On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

(c)     Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

70.     In the alternative still, a claim for damages was first made against Plaintiffs on or about August 28, 2007, when Goldberg filed her Second Amended Complaint.

71.     The Second Amended Complaint constituted a claim for "damages" because:

(a)     Counts III and VII specifically demanded judgment for "damages";

(b)     Count V demanded judgment for monetary relief by demanding that Plaintiffs be required to assume certain costs and by demanding judgment "in such amount as the trier of fact determines would be necessary...";

(c)     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory relief requested by Goldberg if they were to be compelled to complete the work as requested and/or pay for completion of the work;

(d)     On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

(e)     Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

72.     By virtue of Section VI of the Merrimack Policy, coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit was brought during the Merrimack Policy, or within three years of the non-renewal or cancellation of

14

the Merrimack Policy on or about December 27, 2005.

73.     The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Merrimack Policy's Coverage Agreement.

74.     The exclusions set forth in the Merrimack Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

75.     Merrimack has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

76.     Merrimack disagrees with Plaintiffs' position and has taken the position that the *Goldberg* Litigation does not involve a claim for damages, and does not involve Wrongful Acts during the Merrimack policy term.

77.     By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Merrimack Policy, and declare that Merrimack has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Merrimack has breached its duty to defend and is liable to Plaintiffs, and that Merrimack is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT II: DECLARATORY JUDGMENT
### (Travelers' Policy)

78.　　Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 61 as and for their Paragraph 78 of Count II, as if fully set forth herein.

79.　　Plaintiffs are Insureds under the Travelers Policy for purposes of the claims made against them in the *Goldberg* Litigation.

80.　　The Travelers Policy obligates Travelers to pay any "Loss" incurred by Plaintiffs as a result of any Claim first made against Plaintiffs during the Policy Period for a Wrongful Act.

81.　　Travelers has taken the position that a Claim was first made against Plaintiffs in October 2005 when Goldberg's attorney sent a letter to a unit owner of Astor Plaza.

82.　　The October 2005 letter does not constitute a Claim for purposes of the Travelers Policy and, even if it did, many of the Claims brought in the *Goldberg* Litigation do not arise out of, or relate to, the matters in the October 2005 letter. In fact, many of Goldberg's claims are based upon Astor Plaza's alleged actions or inactions after the October 2005 letter.

83.　　A Claim was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

84.　　Coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit brought during the Travelers Policy.

85.　　The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Travelers Policy's Coverage Agreement.

86.　　The exclusions set forth in the Travelers Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

87.　　Travelers has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

88.    Travelers disagrees with Plaintiffs' position and it has taken the position that it does not have a responsibility to defend Plaintiffs.

89.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Travelers Policy, and declare that Travelers has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Travelers has breached its duty to defend and is liable to Plaintiffs, and that Travelers is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT III:  SECTION 155 – BAD FAITH
### (Merrimack)

90.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 62 through 77 of Count I as and for their Paragraph 90 of Count III, as if fully set forth herein.

91.    At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

§ 155. Attorney Fees.

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action

17

reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:

(a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

92.    Merrimack has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

93.    Merrimack had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Merrimack vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Merrimack fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

A.    Declaring that Merrimack's conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.    That judgment be entered in Plaintiffs' favor against Merrimack for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.    That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT IV:  SECTION 155 – BAD FAITH
### (Travelers)

94.     Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 78 through 89 of Count II as and for their Paragraph 94 of Count IV, as if fully set forth herein.

95.     At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

§ 155.  Attorney Fees.

(1)     In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)     $60,000;

(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

96.     Travelers has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

97.     Travelers had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Travelers vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Travelers fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

A.    Declaring that Travelers' conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.    That judgment be entered in Plaintiffs' favor against Travelers for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.    That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER**

By:    _____
       One of Their Attorneys

Anthony G. Barone
David M. Jenkins
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrace, Illinois 60181
630/472-0037
Attorney No.: 34622

### IN THE CIRCUIT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

ASTOR PLAZA CONDOMINIUM )
ASSOCIATION, DANIEL G. MOHEN, )
TRAVIS W. COCHRAN, GEETA )
KRISHNAMURTHI, and WILLIAM )
S. LODER, )
                              )
        **Plaintiffs,** )
                              )
        **v.** )     Case No.    **07CH29201**
                              )
TRAVELERS CASUALTY AND )
SURETY COMPANY OF AMERICA )
and MERRIMACK MUTUAL FIRE )
INSURANCE COMPANY, )
                              )
        **Defendant.** )

**EXHIBIT B**

FILED 2007 OCT 12 AM 3:07
DOROTHY BROWN CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS CHANCERY DIVISION

### COMPLAINT FOR DECLARATORY RELIEF

NOW COME the Plaintiffs, ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER, by and through their attorneys, Barone & Jenkins, P.C., and for their Complaint for Declaratory Relief, states as follows:

### NATURE OF THE ACTION

1.    Plaintiffs are insured by Defendants Travelers Casualty and Surety Company of America ("Travelers") and Merrimack Mutual Fire Insurance Company ("Merrimack") under various policies of insurance. Plaintiffs bring this action pursuant to section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), against the Defendants to obtain a declaration that the Defendants' insurance policies provided defense and indemnity coverage to Plaintiffs for the claims made against them in a lawsuit filed by Margaret Goldberg in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (the *"Goldberg* Litigation").

## JURISDICTION AND VENUE

2.     This court has jurisdiction pursuant to the Declaratory Judgment Act, 735 ILCS 5/2-701. There is an actual controversy between the parties and a declaratory judgment is necessary to determine the parties' rights and obligations relative to the payment of defense and indemnity costs for a pending litigation matter.

3.     Venue is appropriate pursuant to 753 ILCS 5/2-103(e).

## THE PARTIES

4.     Plaintiff, Astor Plaza Condominium Association ("Astor Plaza"), is a Condominium Association organized under the laws of the State of Illinois, which serves as the association for the condominium located at 39 East Schiller in Chicago, Illinois.

5.     Plaintiff, Daniel G. Mohen ("Mohen"), is an Illinois resident living in Unit 2E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

6.     Plaintiff, Travis W. Cochran ("Cochran"), is an Illinois resident living in Unit 1W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

7.     Plaintiff, Geeta Krishnamurthi ("Krishnamurthi"), is an Illinois resident living in Unit 3W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

8.     Plaintiff, William S. Loder ("Loder"), is an Illinois resident living in Unit 4W of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

9.     Plaintiffs Mohen, Cochran, Krishnamurthi, and Loder are current members of the Board for Astor Plaza.

10     On information and belief, defendant Travelers is an insurance company authorized to transact insurance business in Illinois.

11.     On information and belief, defendant Merrimack is an insurance company authorized to transact insurance business in Illinois.

2

12.     Margaret Goldberg ("Goldberg") is an Illinois resident living in Unit 4E of the Astor Plaza condominium located at 39 East Schiller in Chicago, Illinois.

13.     Goldberg is the plaintiff in an action more fully described below.

## FACTS COMMON TO ALL COUNTS

### The Goldberg Litigation

*A.    Goldberg's Original Complaint.*

14.     In November 14, 2006, Goldberg filed a lawsuit in the Circuit Court of Cook County, Illinois, County Department, Chancery Division, Cause No. 06 CH 24682, captioned *Margaret Goldberg v. Astor Plaza Condominium Association, et al.* (A copy of the original *Goldberg* Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "A").

15.     In the original Complaint, Goldberg alleged certain actions and/or inactions of the Astor Plaza Condominium Association Board of Directors relative to her and certain common elements and limited common elements associated with her condominium unit. Count I was a claim for oppression of a minority shareholder pursuant to the Illinois Business Corporations Act, and Count II was for declaratory relief.

16.     The original Complaint included the following allegations, among others:

    (a)     Goldberg has experienced oppression as a minority owner by certain actions and proposed actions of the Astor Plaza Board of Directors;

    (b)     over the course of the last five or six years, Goldberg found it increasingly difficult to get responses to her concerns with regard to the building;

    (c)     Goldberg was "compelled" to retain counsel because the Association disregarded her interests and was failing to complete work that was to have been done with regard to a number of common elements affecting her property; and

    (d)     Astor Plaza disregarded Goldberg's concerns about the front window frame on her unit and the structural integrity of the window casings on the side of her unit, reneged on a commitment to repair Goldberg's exterior metal balcony, effectively set aside Goldberg's complaints about building

3

security, and continued to enforce building rules and regulations only on a selective and discriminatory basis.

17.     Goldberg further complained about a renovation plan that began in September 2006 which was allegedly aimed primarily at improving the overall appearance of the front lobby and building façade.

18.     In Count I, Goldberg requested the court to grant the following relief:

(a)     the entry of an order requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

(b)     the entry of an order prohibiting Astor Plaza from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the by-laws;

(c)     the entry of an order appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to the governing documents which is prepared to perform its duties in accordance with the same; and

(d)     the entry of an order granting Goldberg her costs of suit and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

19.     On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete work as requested, and/or to pay for completion of said work.

**B.      Goldberg's First Amended Complaint.**

20.     Goldberg later filed a First Amended Complaint with more detailed factual allegations, and which contained the same two counts as those in the original complaint. (A copy of the First Amended Complaint is attached and incorporated by reference, as if fully set forth herein, as Exhibit "B").

21.     In the First Amended Complaint, Goldberg alleged, among other things, that the defendants (Plaintiffs herein) have acted in a manner that was oppressive with regard to

4

Goldberg's interest in the building, in dereliction of the obligations imposed upon them by the governing documents, in bad faith and in an arbitrary, overbearing and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be borne by Goldberg.

22.    In Count I of the First Amended Complaint, Goldberg requested the court enter an order:

(a)    requiring the Board to complete the work required with regard to the limited common elements adjoining the Goldberg unit, including work with regard to the window casing in front of Goldberg's unit, the side window frames, and her balcony;

(b)    declaring that any financing agreement which the unit members may have voted or may in the future vote to implement, pursuant to which the rights and interests of Astor Plaza would be in any way impaired or subject to a lien, is invalid and unenforceable under the governing documents and that, by virtue thereof, no such liens should be enforced as against any rights or property in which the Goldbergs (or other non-voting members) have an interest;

(c)    prohibiting Astor Plaza's unit owners from entering into any financing agreement that would serve to create a lien on the common elements, common fund or individual units of owners, as well as any interest or right in the Property, pursuant to the governing documents;

(d)    requiring that Astor Plaza maintain and make available minutes which accurately reflect what takes place at meetings, which should be scheduled pursuant to the governing documents, and which are properly ratified as minutes at appropriate meetings;

(e)    requiring that Astor Plaza's Board enforce both the rules and regulations of the Association and the obligations imposed upon unit owners by the governing documents and that appropriate fines be levied against unit owners who have violated these rules, regulations and obligations;

(f)    compel appropriate modifications to the governing documents so as to establish a dispute resolution procedure that would allow for individuals with minority interests, such as Goldberg, to pursue relief in such circumstances without the need for incurring costs and expenses such as those attendant to this lawsuit (i.e., a mediation or arbitration procedure);

(g)    appointing a custodian or receiver to manage the business and affairs of the corporation until such time as a Board has been constituted pursuant to

the governing documents which is prepared to perform its duties in accordance with the same; and.

(h)    granting Goldberg her costs of suit, attorneys fees incurred and such additional relief as the Court deems just and proper or to which she is otherwise entitled as a matter of law.

23.    On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunction relief requested by Goldberg in the First Amended Complaint if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

24.    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

25.    The attorney fees sought by Goldberg were sought as monetary relief by virtue of the Condominium Property Act and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

C.    *Goldberg's Second Amended Complaint.*

26.    On or about August 28, 2007, Goldberg filed a Second Amended Complaint containing eight counts. (A copy of the Second Amended Complaint is attached an incorporated by reference, as if fully set forth herein, as Exhibit "C").

27.    In Count I of the Second Amended Complaint, Goldberg sought relief under 765 ILCS 605/19, for the alleged failure of Astor Plaza to produce minutes of meetings, and she alleged she was "compelled" to retain an attorney to request that she be provided copies of meeting minutes from prior meetings.

28.    Goldberg further alleged in Count I that, "[u]ntil such time as Astor Plaza produces those minutes to Goldberg, Goldberg will continue to incur attorneys fees and costs for

which she requests recovery pursuant 765 ILCS 605/19," and she asked the court to compel

Astor Plaza to produce the minutes for meetings held from 2004 to the present.

29.     Goldberg further asked the court to enter an order awarding Goldberg her

attorney's fees and costs, "together with such additional relief as the Court deems just and proper

or to which she is otherwise entitled as a matter of law."

30.     In Count II, Goldberg sought relief under 765 ILCS 605/19 for Astor Plaza's

alleged failure to produce applicable rules and regulations, and she asked the court to enter an

order compelling Astor Plaza to pay the attorney fees and costs that Goldberg had incurred in

connection with the actions she had taken through her counsel to request current copies of rules

and regulations from 2005 to 2007, "together with such additional relief as the Court deems just

and proper or to which she is otherwise entitled as a matter of law."

31.     In Count III, Goldberg sought relief against Loder under 805 ILCS 105/103.20,

which section provides in relevant part:

> All persons who assume to exercise corporate powers without authority to do so shall be
> jointly and severally liable for all debts and liabilities incurred or arising as a result
> thereof.

32.     In Count III, Goldberg further alleged that Loder "used his ostensible authority

with the Board" to make certain promises to Goldberg and to demand certain accommodations

for himself and members of his household, and that she was consistently "harassed by the Loder

household."

33.     Count III further alleged that Goldberg was denied access to common property,

thereby incurring "damages." Moreover, Goldberg asked the court to award her damages,

together with attorney fees and costs, in an amount in excess of $50,000, together with additional

relief as the court deems just and proper.

34.     In Count IV, Goldberg sought relief under 805 ILCS 105/108.21 against Astor

Plaza for its alleged failure to provide access to and recording of meetings. Goldberg asked the

court to enter a declaratory judgment declaring that she has a right to designate a representative to attend and record board meetings and further awarding her attorney fees and costs, "and such additional relief as the Court deems just and appropriate or to which she is otherwise entitled as a matter of law."

35. In Count V, Goldberg sought relief under Section V of the Declaration against all defendants with respect to the financing obtained relative to the construction project undertaken by the Board. Goldberg alleged that the underlying defendants (Plaintiffs herein) should be required to assume the costs of discharging the lien placed on the property, including both the cost of the individual shares, any pre-payment penalties, attorney fees and costs, and any other costs and expenses arising from that lien.

36. Among other things, Goldberg sought an accounting regarding all expenditures and work done with respect to the construction project, and sought judgment against the defendants (Plaintiffs herein) individually "in such amount as the trier of fact determines would be necessary to discharge any lien, mortgage or other encumbrance created by the project, together with any costs and expenses incurred in connection therewith," plus costs and attorneys fees and "such additional relief as the Court deems just and proper or to which Goldberg may otherwise be entitled as a matter of law."

37. In Count VI, Goldberg sought declaratory judgment relief with regard to Astor Plaza's duties and obligations under 765 ILCS 605/18(b)(2). She claimed that the individual defendants had used their positions as members of the Board to establish policies and procedures that recognize the existence of "*de facto*" segregation of unit owners depending upon whether they are or are not members of the Board.

38. In Count VI, Goldberg specifically requested that each defendant who is found to have violated applicable rules and regulations "should be required to pay such fines or violations

as may be provided for in the governing documents or rules and regulations, together with an amount sufficient to cover any damages resulting therefrom," plus costs and additional relief.

39.    In Count VII, Goldberg brought a claim against Astor Plaza for its alleged failure to maintain the common elements. Goldberg alleged that she has a balcony that is substantially rusted, a deteriorating window frame in the front bay window, and side window frames which are badly deteriorated in her apartment.

40.    Goldberg asked the court to declare that the work necessary to repair Goldberg's balcony, and east and north side window frames, is the responsibility of Astor Plaza and that Astor Plaza should therefore pay for and ensure that those elements are repaired and restored with all due haste. Goldberg also sought a judgment in an amount sufficient to cover any damages shown to have resulted from Astor Plaza's failure to provide such repair and restoration thereto, plus costs and other additional relief.

41.    In Count VIII, Goldberg sought relief under 805 ILCS 5/112.50, which provides that a court may dissolve a corporation if the corporation is acting in a manner that is oppressive to shareholders or the corporate assets are being misapplied or wasted. Goldberg alleged that the defendants acted in a manner that was oppressive with regard to Goldberg's interest in the building, in dereliction of the obligations imposed upon them by a governing document, in bad faith and in an arbitrary and heavy-handed manner, and in a manner likely to result in unnecessary waste, gross over-reaching, and expense that will need to be wrongfully borne by Goldberg.

42.    Goldberg sought injunctive relief and the appointment of an interim receiver. Goldberg requested that the court enter a declaratory judgment and to require that the Board complete work with regard to the limited common elements adjoining the Goldberg unit, plus other declaratory relief.

43.    Goldberg's specific demand for "damages" in Count III and Count IV of the Second Amended Complaint constituted a claim for "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

44.    Goldberg's demand for judgment in Count V was a demand for monetary relief and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

45.    With respect to the declaratory relief requested in the Second Amended Complaint, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work.

46.    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs and, as such, constitute "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

47.    The attorney fees sought by Goldberg in the Second Amended Complaint were sought as monetary relief by virtue of the Condominium Property Act and, as such, constituted "damages" and/or "Loss" for purposes of the Merrimack Policy and the Travelers Policy, respectively.

## The Tendering Of The Goldberg Litigation For Defense

48.    Plaintiffs gave Travelers and Merrimack notice of the Goldberg Litigation and on numerous occasions have requested that each provide a defense.

49.    Travelers has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

50.    Merrimack has declined to provide Plaintiffs with a defense in the Goldberg Litigation.

51.    Plaintiffs have incurred cost and expense, and will continue to incur cost and expense, relative to the Goldberg Litigation.

### The Merrimack Policy

52.    Merrimack issued Policy No. SBP220-6003, covering the Policy Period of December 27, 2004 through December 27, 2005. (A copy of the Merrimack Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "D").

53.    Astor Plaza is the named insured under the Merrimack Policy, and each of the other Plaintiffs are insureds under the Merrimack Policy.

54.    The Merrimack Policy contains a Directors and Officers Liability Endorsement with claims made coverage. This Endorsement contains the following coverage grant:

SECTION I – COVERAGES

A.    INSURING AGREEMENTS

1.    We will pay those sums that the "Insured" becomes legally obligated to pay as damages, in excess of the "Insured's" retention, because of any civil claim first made against the "Insured" during the policy term, or during the Insured's Extended Discovery Period, arising out of any "Wrongful Act" committed during the policy term. No other obligation or liability to pay sums or perform acts or services is covered unless provided for under Supplementary Payments.

a.    The most we will pay for damages is limited as described in Limits of Insurance above;

b.    We may, at our discretion, investigate any "Wrongful Act" and settle any claim or "suit" that may result; and

c.    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements to which this coverage applies.

2.    This insurance applies to "Wrongful Acts" only if a claim for damages because of a "Wrongful Act" is first made against an "Insured" during the policy term or Insured's Extended Discovery Period.

a.    A claim by a person or organization seeking damages will have been deemed to have been made when notice of such claim is received and recorded by the "Insured" or by us, whichever comes

11

first.

b.    All claims for damages because of "Wrongful Acts" arising from the same "Wrongful Act" will be deemed to have been made at the time the first of those claims is made against an "Insured".

55.    The Merrimack Policy does not define the term "civil claim" or "claim."

56.    The Merrimack Policy does not define the term "damages."

57.    Section VI of the Merrimack Policy provides as follows:

SECTION VI – INSURED'S EXTENDED DISCOVERY PERIOD

A.    In the event this coverage part is subject to any of the following changes:

    1.    reduced limits of insurance;

    2.    restricted coverage provisions;

    3.    increased self-insured retention;

    4.    non-renewal; or

    5.    cancellation.

then such insurance afforded prior to such change shall not apply to "Wrongful Acts" unless claim is made or a "suit" is brought within three years of the effective date of such change.

B.    The Insured's Extended Discovery Period only applies to "Wrongful Acts" occurring during the Policy period and shall be excess over any other valid and collectible insurance.

58.    On December 27, 2005, the Merrimack Policy was either non-renewed or canceled.

## The Travelers Policy

59.    Travelers issued a Non-Profit Management and Organization Liability insurance policy, No. 10466807. This policy covers December 27, 2005 through December 27, 2008. (A copy of the Travelers Policy is attached and incorporated by reference, as if fully set forth herein, as Exhibit "E").

60.    The Travelers Policy provides in pertinent part that Travelers will pay on behalf of the Insureds any "Loss" incurred by the Insureds as a result of any Claim first made against the Insured during the Policy Period for a Wrongful Act.

61.    By virtue of Endorsement No. CIRI 70004 IL (04-00), the Travelers Policy defines the term "Claim" to include "a written demand for monetary relief or non-monetary relief," as well as "a civil proceeding commenced by the service of a complaint or similar pleading."

## COUNT I: DECLARATORY JUDGMENT
### (Merrimack Policy)

62.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 as and for their Paragraph 62 of Count I, as if fully set forth herein.

63.    Plaintiffs are Insureds under the Merrimack Policy for purposes of the claims made against them in the *Goldberg* Litigation.

64.    The Merrimack Policy obligates Merrimack to pay the sums in damages because of any civil claim first made against Plaintiffs during the Policy term, or during the Extended Discovery Period arising out of any "Wrongful Act" committed during the Policy term.

65.    Travelers has taken the position that a claim was first made against Plaintiffs in October 2005, which contention is denied by Plaintiffs. As an alternative to its denial, however, to the extent a claim is deemed to have been made in October 2005, such a claim was made during the term of the Merrimack Policy.

66.    In the alternative still, a claim for damages was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

67.    The original Complaint constituted a claim for damages because, on information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested

13

and/or to pay for completion of said work.

    68.    In the alternative still, a claim for damages was first made against Plaintiffs when Goldberg filed her First Amended Complaint.

    69.    The First Amended Complaint constituted a claim for "damages" because:

    (a)    On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory or injunctive relief requested by Goldberg if they were to be compelled to complete the work as requested and/or to pay for completion of said work;

    (b)    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

    (c)    Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

    70.    In the alternative still, a claim for damages was first made against Plaintiffs on or about August 28, 2007, when Goldberg filed her Second Amended Complaint.

    71.    The Second Amended Complaint constituted a claim for "damages" because:

    (a)    Counts III and VII specifically demanded judgment for "damages";

    (b)    Count V demanded judgment for monetary relief by demanding that Plaintiffs be required to assume certain costs and by demanding judgment "in such amount as the trier of fact determines would be necessary...";

    (c)    On information and belief, Plaintiffs would incur costs and expenses to comply with the declaratory relief requested by Goldberg if they were to be compelled to complete the work as requested and/or pay for completion of the work;

    (d)    On information and belief, the "appropriate fines" Goldberg requested to be levied against unit owners were sought against Plaintiffs as monetary relief; and

    (e)    Goldberg sought attorney fees as monetary relief under the Condominium Property Act.

    72.    By virtue of Section VI of the Merrimack Policy, coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit was brought during the Merrimack Policy, or within three years of the non-renewal or cancellation of

14

the Merrimack Policy on or about December 27, 2005.

73.    The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Merrimack Policy's Coverage Agreement.

74.    The exclusions set forth in the Merrimack Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

75.    Merrimack has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

76.    Merrimack disagrees with Plaintiffs' position and has taken the position that the *Goldberg* Litigation does not involve a claim for damages, and does not involve Wrongful Acts during the Merrimack policy term.

77.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Merrimack Policy, and declare that Merrimack has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Merrimack has breached its duty to defend and is liable to Plaintiffs, and that Merrimack is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT II: DECLARATORY JUDGMENT
### (Travelers' Policy)

78.    Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 61 as and for their Paragraph 78 of Count II, as if fully set forth herein.

79.    Plaintiffs are Insureds under the Travelers Policy for purposes of the claims made against them in the *Goldberg* Litigation.

80.    The Travelers Policy obligates Travelers to pay any "Loss" incurred by Plaintiffs as a result of any Claim first made against Plaintiffs during the Policy Period for a Wrongful Act.

81.    Travelers has taken the position that a Claim was first made against Plaintiffs in October 2005 when Goldberg's attorney sent a letter to a unit owner of Astor Plaza.

82.    The October 2005 letter does not constitute a Claim for purposes of the Travelers Policy and, even if it did, many of the Claims brought in the *Goldberg* Litigation do not arise out of, or relate to, the matters in the October 2005 letter. In fact, many of Goldberg's claims are based upon Astor Plaza's alleged actions or inactions after the October 2005 letter.

83.    A Claim was first made against Plaintiffs on or about November 14, 2006, when Goldberg filed her original Complaint.

84.    Coverage is provided for the alleged Wrongful Acts claimed in the *Goldberg* Litigation because a Claim was made or suit brought during the Travelers Policy.

85.    The allegations made against Plaintiffs in the *Goldberg* Litigation fall within the scope of the Travelers Policy's Coverage Agreement.

86.    The exclusions set forth in the Travelers Policy are not applicable to any of the claims made against Plaintiffs in the *Goldberg* Litigation.

87.    Travelers has breached its duty to defend Plaintiffs by failing and refusing to defend Plaintiffs in connection with the *Goldberg* Litigation.

88.    Travelers disagrees with Plaintiffs' position and it has taken the position that it does not have a responsibility to defend Plaintiffs.

89.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this court. Pursuant to the terms of section 2-701 of the Illinois Code of Civil Procedure (735 ILCS 5/2-701), this court has the power to declare and adjudicate the rights and liabilities of the parties hereto under the terms and provisions of the policy of insurance referred to herein, and to adjudicate the final rights of all parties, and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment declaring the rights of the parties under the Travelers Policy, and declare that Travelers has a duty to defend Plaintiffs with respect to the *Goldberg* Litigation, that Travelers has breached its duty to defend and is liable to Plaintiffs, and that Travelers is estopped from raising policy defenses to coverage, or for any further relief the court deems just and appropriate under the circumstances.

## COUNT III:  SECTION 155 – BAD FAITH
### (Merrimack)

90.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 62 through 77 of Count I as and for their Paragraph 90 of Count III, as if fully set forth herein.

91.    At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

§ 155. Attorney Fees.

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action

17

reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)     $60,000;

(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

92.     Merrimack has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

93.     Merrimack had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Merrimack vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Merrimack fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

A.     Declaring that Merrimack's conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.     That judgment be entered in Plaintiffs' favor against Merrimack for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.     That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

### COUNT IV:  SECTION 155 – BAD FAITH
#### (Travelers)

94.    Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 61 and Paragraphs 78 through 89 of Count II as and for their Paragraph 94 of Count IV, as if fully set forth herein.

95.    At all times herein relevant there was in full force and effect in the State of Illinois a certain statute known as 215 ILCS §5/155 which provides, in relevant part, as follows:

§ 155.  Attorney Fees.

(1)    In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any on of the following amounts:

(a)    60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b)    $60,000;

(c)    the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

96.    Travelers has acted in a vexatious and unreasonable manner, and has violated the foregoing statute, by its failure to timely and appropriately respond to the notice of claim and/or the tender for defense of the underlying suit from Plaintiffs, and by its failure and refusal to defend Plaintiffs in the underlying suit.

97.    Travelers had an obligation and duty to defend Plaintiffs upon and after the date it first learned of the claim, which obligation Travelers vexatiously and unreasonably refused to recognize, which has resulted in Plaintiffs incurring substantial expenses and costs which they would not otherwise be obligated to incur had Travelers fulfilled its contractual obligations.

WHEREFORE, Plaintiffs request that this Honorable Court enter a judgment as follows:

19

A.   Declaring that Travelers' conduct was vexatious and reasonable and in violation of Section 155 of the Illinois Insurance Code.

B.   That judgment be entered in Plaintiffs' favor against Travelers for the Statutory penalty of not less than $60,000, plus an award of reasonable attorney fees incurred in this action, which award will be based on a separate fee petition to be filed within 30 days of the entry of this judgment, plus costs and interest.

C.   That the Court grants Plaintiffs such other and further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

**ASTOR PLAZA CONDOMINIUM ASSOCIATION, DANIEL G. MOHEN, TRAVIS W. COCHRAN, GEETA KRISHNAMURTHI, and WILLIAM S. LODER**

By:   _____

One of Their Attorneys

Anthony G. Barone
David M. Jenkins
Barone & Jenkins, P.C.
635 Butterfield Road, Suite 145
Oakbrook Terrace, Illinois 60181
630/472-0037
Attorney No.: 34622